Affirmed and Opinion filed January 30, 2003









Affirmed and Opinion filed January 30, 2003

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01254-CR

____________

 

DONNIE BERNARD GAINES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 869,113

 



 

O P I N I O N

Appellant Donnie Bernard Gaines was charged with the felony
offense of possession with intent to deliver a controlled substance, namely
cocaine, weighing over 400 grams.  See
Tex. Health & Safety Code Ann.
' 481.112(f) (Vernon Supp. 2003).  After the trial court denied his motion to
suppress, appellant pleaded guilty pursuant to a plea bargain agreement with
the State.  In accordance with the plea
agreement, the trial court sentenced appellant to 15 years confinement in the
Texas Department of Corrections, Institutional Division, and fined appellant
$1,000.  Appellant filed a notice of
appeal, “excepting to the ruling of the court on [appellant=s] pre-trial motion to suppress
evidence.”  We affirm.








FACTUAL BACKGROUND

On February 15, 2001, Houston Police Department narcotics
interdiction officer Sgt. Hans Meisel was working at Hobby Airport with Harris
County Sheriff=s Deputy Henry Palcios.  Sgt. Meisel had ten years experience with the
Houston Police Department.  He was
assigned to the public transportation task force and had worked at Hobby
Airport for approximately four years. 
Deputy Palcios had thirteen years experience with the Sheriff=s Department and had been working on
the narcotics force at the airport for about a year and three months.

Both officers were in plain clothes at the airport.  As they walked past the Southwest Airlines
ticket line, appellant, who was standing in the line, turned around and stared
at them, something the officers thought was unusual.  According to Sgt. Meisel, there were people
in front of appellant, and appellant was tiptoeing in an obvious attempt to see
where the officers were going.  The
officers separated, and Deputy Palcios went to the ticket counter where
appellant was not looking at the ticket agent who was attempting to give
appellant his ticket.  When Deputy
Palcios told Sgt. Meisel about this behavior, Sgt. Meisel thought it unusual.

After receiving his ticket, appellant made no attempt to go
through a security check or down the concourse to board a plane.  Instead, appellant hurried outside to the
parking garage, at one point nearly jogging. 
Appellant was wearing a t-shirt, a denim jacket, and long pants, and was
wearing or carrying a Titan=s overcoat.








The officers followed appellant, and Sgt. Meisel approached
him in the parking garage, identified himself as a Houston police officer, and
asked to talk with appellant.  Appellant
asked why and continued walking.  Without
specifying what he had observed, Sgt. Meisel then explained he worked at the
airport on a regular basis and found appellant=s actions suspicious.  Sgt. Meisel again asked to talk with
appellant.  Appellant again asked, “Why?”  Sgt. Meisel repeated he was a police officer,
and appellant replied, “I am going home,” and continued walking.  Appellant had a Southwest ticket in his hand,
and when Sgt. Meisel asked whether it was his ticket, appellant said, “Yes.”

Appellant went down the parking garage stairs, with Sgt.
Meisel alongside, and Deputy Palcios behind. 
Appellant appeared nervous as he descended the stairs.  When appellant turned right onto the parking
lot from the stairs, Sgt. Meisel saw a bulge on appellant=s lower waist area.  Based on his training and experience, Sgt.
Meisel thought the bulge was a weapon and was concerned for their safety.  He informed Deputy Palcios he thought
appellant had a weapon.  At that point,
appellant stopped and “kind of raised his arms.”  A uniformed Houston police officer, Officer
Spears, was directing traffic a few yards away, and Sgt. Meisel also told
Officer Spears he thought appellant had a gun. 
Officer Spears immediately came over, placed appellant against a truck,
and patted appellant down.

After not finding anything when Spears patted appellant down
from the back, Spears turned appellant around, discovered the bulge, and said, “Yeah,
here it is,” a statement Sgt. Meisel interpreted as referring to a weapon.  Sgt. Meisel lifted appellant=s shirt and saw a brick of cocaine in
appellant=s waistband.  Appellant was placed in custody and taken to
the police office at the airport, where Sgt. Meisel removed the cocaine.  The substance field-tested positive for cocaine
and weighed a kilogram.  

Appellant testified he saw the officers for the first time in
the parking lot stairwell.  He testified
Sgt. Meisel touched him three times during the interaction, once “chucking”
appellant waist high.  According to
appellant, Sgt. Meisel told Spears to check appellant=s waistband, Officer Spears then did
so, and said “Oh, I feel something.”  At
that point, Sgt. Meisel walked up, raised appellant=s shirt, and said, “Oh, here it is.”








The trial court denied appellant=s motion to suppress and entered a
written order to that effect.  Appellant
then pleaded guilty.  The plea form
contains a handwritten statement, “Defendant reserves his right to appeal the
adverse ruling on defendant=s pretrial motion to suppress evidence.”  Appellant initialed the preprinted provision
indicating, if the punishment did not exceed that recommended by the prosecutor
and agreed to by appellant and his attorney, the court must give its permission
for appellant to appeal “on any matter in this case except for those matters
raised by you by written motion filed prior to trial.”  The form also contains a preprinted
statement, “I waive any right of appeal which I may have should the court
accept the foregoing plea bargain agreement between myself and the prosecutor.”  The latter statement is not lined out.  In the judgment, in the section under special
instructions or notes, the following, handwritten statement is lined out:  “Appeal waived, No permission for appeal
granted.”

DISCUSSION

In a single issue, appellant challenges the trial court=s denial of his motion to suppress
the evidence seized as a result of his warrantless arrest.  He argues the officers had no reasonable
suspicion or probable cause to detain him and no evidence to support a
reasonable concern for their safety such as would justify a Terry
search.[1]  He also contends there was no evidence to
justify seizure of the cocaine discovered during the Terry search.  The State responds (1) appellant, by virtue
of the terms of his plea agreement, has waived his right to appeal and this
court lacks jurisdiction over the appeal, (2) the detention and frisk of
appellant were lawful, and (3) the cocaine was legally seized under the “plain
view” doctrine.

I.  Threshold Issues








A. 
Waiver.  To support its waiver argument, the State
relies on a single preprinted sentence on the 
plea form, which reads, “I waive any right of appeal which I may have
should the court accept the forgoing plea agreement between myself and the
prosecutor.”  The State argues this
provision controls over the following handwritten notation on the plea form: “Defendant
reserves his right to appeal the adverse ruling on defendant=s pretrial motion to suppress
evidence.”  The State contends the
handwritten notation, just above the preprinted waiver,  was a pre-plea attempt to reserve his appeal
rights, which did not survive the trial court=s acceptance of the plea
bargain.  There is no reporter=s record of the plea hearing, and the
State does not explain why the following notation on the judgment was lined
out:  “Appeal waived, No permission for
appeal granted.”  On this record, we
conclude appellant did not waive his right to appeal.  See Alzarka v. State, 90 S.W.3d 321,
324 (Tex. Crim. App. 2002) (holding defendant did not waive appeal and that
recordCin which trial judge, district
attorney, and defendant=s attorney repeatedly made statements agreeing defendant
would be permitted to appealCdirectly contradicted and rebutted any presumption raised by
terms of boiler plate plea form defendant signed).  Cf. Freeman v. State, 913 S.W.2d 714,
716B17 (Tex. App.CAmarillo 1995, no pet.) (concluding
record was clear appellant waived right to appeal when record showed trial
court asked appellant whether he was waiving or giving up right to appeal and
appellant answered “yes.”).

B. 
Jurisdiction.  The State also implies the notice
of appeal was insufficient to confer jurisdiction on this court.  Citing Texas Rule of Appellate Procedure
25.2(b)(3)(C), the State argues this court has no jurisdiction because the
record does not reflect the trial court gave appellant permission to
appeal.  Subsection (b)(3), however,
provides in its entirety:

But if the appeal is from a judgment rendered on the
defendant=s plea of guilty or nolo contendere under Code of
Criminal Procedure article 1.15, and the punishment assessed did not exceed the
punishment recommended by the prosecutor and agreed to by the defendant, the
notice must:

(A) specify that the appeal is for a jurisdictional
defect;

(B) specify that the substance of the appeal was
raised by written motion and ruled on before trial; or

(C) state that the trial court granted permission to
appeal.

 

Tex. R. App. P. 25.2(b)(3).

In his notice of appeal, appellant stated he was “excepting
to the ruling of the court on [appellant=s] pre-trial motion to suppress.”  This satisfies Texas Rule of Appellate
Procedure 25.2(b)(3)(B), giving this court jurisdiction to hear the appeal.

II.  Denial of Appellant’s Motion
to Suppress

A. 
Standard of review.  We review a trial
court=s decision on a motion to suppress
under an abuse of discretion standard. See Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996). 
Under this standard, we give almost total deference to a trial court=s determination of historical facts
supported by the record, especially when the trial court=s fact findings are based on an
evaluation of credibility and demeanor.  Loserth
v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We also give the same amount of deference to the trial court=s ruling on “application of law to
fact questions”Calso known as “mixed questions of law and fact”Cif the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor.  Guzman, 955 S.W.2d at 89.  An appellate court reviews de novo “mixed
questions of law and fact” not falling within this category.  Id.

When, as in this case, the trial court makes no explicit
findings of historical fact, we presume it made those findings necessary to
support its ruling, provided they are supported in the record.  See Carmouche v. State, 10 S.W.3d 323,
327B28 (Tex. Crim. App. 2000).  Similarly, we view evidence in the light most
favorable to the trial court=s ruling on mixed questions of law and fact. See Guzman,
955 S.W.2d at 89.

B. 
Legality of the detention.  There are three
distinct categories of interactions between police officers and citizens: encounters,
investigative detentions, and arrests.  State
v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002) (citing Francis v.
State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996) (Baird, J., concurring in
affirmance of court of appeals judgment, dissenting from decision to dismiss
petition)).








An encounter is a friendly exchange of pleasantries or
mutually useful information and does not implicate Fourth Amendment
concerns.  See Florida v. Rodriguez,
469 U.S. 1, 5B6, 105 S. Ct. 308, 311 (1984) (per
curiam); Francis v. State, 922 S.W.2d at 178 (Baird, J., concurring and
dissenting); Josey v. State, 981 S.W.2d 831, 838 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d). 
At this level the police are not required to possess any particular
level of suspicion because the citizen is not compelled to stay.  See Francis, 922 S.W.2d at 178; Josey,
981 S.W.2d at 838.

The exchange remains an encounter until a reasonable person
would believe he is not free to leave and has yielded to the officers= show of authority or has been
physically forced to yield.  Munera v.
State, 965 S.W.2d 523, 527 (Tex. App.CHouston [14th Dist.] 1997, pet. ref=d). 
Then, for purposes of both the Fourth Amendment and Article I, ' 9 of the Texas Constitution, the
citizen has been seized.  Johnson v.
State, 912 S.W.2d 227, 235B36 (Tex. Crim. App. 1995). 
An investigative detention, which is a seizure, is a temporary and
narrowly tailored investigation directed at determining a person=s identity or maintaining the status
quo while the officer obtains more information. 
Dean v. State, 938 S.W.2d 764, 768 (Tex. App.CHouston [14th Dist.] 1997, no
pet.).  At this level, the officer must
have specific articulable facts, in light of his experience and personal
knowledge, together with inferences from those facts, which would reasonably
warrant the intrusion on the freedom of the citizen.  Francis, 922 S.W.2d at 178; Josey,
981 S.W.2d at 838.  The articulable facts
must create some reasonable suspicion that (1) an activity out of the ordinary
is occurring or has occurred, (2) some suggestion to connect the detainee with
the unusual activity, and (3) some indication that the unusual activity is
related to a crime.  Davis v. State,
947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

The highest level of contact is an arrest, which is also a
seizure, but not as brief as an investigative detention.  Francis, 922 S.W.2d at 178.  Probable cause must accompany an arrest.  Id. 
Probable cause to arrest exists when the facts and circumstances within
the knowledge of the arresting officer, and of which he has reasonably
trustworthy information, are sufficient to warrant a reasonable person to
believe that a particular person has committed or is committing a crime. See
Guzman, 955 S.W.2d at 87.       








In the present case, the encounter became a detention either
when appellant, who had been continuously evading the officers, stopped and
raised his arms, or immediately thereafter when Officer Spears placed him up
against the truck.  See Roy v. State,
55 S.W.3d 153, 157 (Tex. App.CCorpus Christi 2001) (holding detention occurred after
officer observed large bundle near suspect=s waist and handcuffed suspect for
further investigation), pet. dism=d, improvidently granted, per curiam, 90 S.W.3d 720 (Tex. Crim. App.
2002).  At either point, the officers
were aware of the following specific articulable facts: (1) while waiting in
line with his luggage at the ticket counter, appellant stared at Sgt. Meisel
and Deputy Palcios, to the degree appellant was standing on tiptoe at times and
did not look at the ticket agent when the agent was trying to hand him the
ticket; (2) instead of proceeding to the boarding area, as ticketed passengers
typically do, appellant went outside to the parking lot, walking so fast he was
almost jogging as the officers followed him; (3) appellant seemed nervous.  See Illinois v. Wardlow, 528 U.S. 119,
124, 120 S. Ct. 673, 676 (2000) (stating Supreme Court cases have recognized
nervous, evasive behavior as pertinent factor in determining reasonable
suspicion for Terry stop; and headlong flight is the consummate act of
evasionCnot necessarily indicative of
wrongdoing, but certainly suggestive of such).[2]
 In addition, (1) appellant was wearing
or carrying a large, bulky coat; (2) in the parking lot, when Sgt. Meisel asked
whether the ticket appellant was carrying was his, appellant said, “yes,” but
appellant also stated he was “going home”; and (3) Sgt. Meisel observed a bulge
at appellant=s waist, which, according to Palcios,
is a place people frequently conceal weapons.

The facts in the present case compare favorably to those the
United States Supreme Court held constituted reasonable suspicion justifying a
seizure in Rodriguez:








Before the officers even spoke to the three
confederates, one by one they had sighted the plainclothes officers and had
spoken furtively to one another.  One was
twice overheard urging the others to “get out of here.” Respondent=s strange movements in his attempt to evade the
officers [an attempt to move away in which respondent=s legs were pumping up and down very fast but not
covering much ground, as if he were running in place] aroused further
justifiable suspicion, and so did the contradictory statements concerning the
identities of Blanco and respondent. Officer McGee had special training in
narcotics surveillance and apprehension; like members of the Drug Enforcement
Administration, the Narcotics Squad of the Dade County Public Safety Department
is “carrying out a highly specialized law enforcement operation designed to
combat the serious societal threat posed by narcotics distribution.” United
States v. Mendenhall, supra, 446 U.S. at 562, 100 S. Ct., at 1881
(POWELL, J., concurring in part and concurring in judgment). Respondent “was
approached in a major international airport where, due in part to extensive
antihijacking surveillance and equipment, reasonable privacy expectations are
of significantly lesser magnitude . . . .” 
Florida v. Royer, supra, 460 U.S., at 515, 103 S. Ct., at
1333 (BLACKMUN, J., dissenting).

 

469 U.S. at 6, 105 S. Ct. at 311. 
Just as the facts known to the officers in Rodriguez created
reasonable suspicion, so the facts known to the officers here justified their
suspicion that appellant was involved in criminal activity, and, therefore,
justified their further investigation.[3]

C.  Legality of the
Terry search.  Law enforcement personnel may conduct a
limited search for weapons of a suspect=s outer clothing, even without
probable cause, when an officer reasonably believes the suspect is armed and
dangerous to the officer or others in the area. 
Balentine v. State, 71 S.W. 3d 763, 769 (Tex. Crim. App. 2002)
(citing Terry, 392 U.S. at 27, 29; Carmouche, 10 S.W.3d at
329).  “>The purpose of this limited search is
not to discover evidence of crime, but to allow the officer to pursue his
investigation without fear of violence.’” 
Id. (quoting Adams v. Williams, 407 U.S. 143, 146, 92 S.
Ct. 1921, 1923 (1972)).  Such a “weapons
frisk” is justified only when the officers can point to specific and articulable
facts which reasonably led them to conclude the suspect might possess a
weapon.  Id. (citing Carmouche,
10 S.W.3d at 329).  The officers need not
be absolutely certain an individual is armed; rather, the issue is whether a
reasonably prudent person would justifiably believe that he or others were in
danger. Id.  (citing O=Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App.
2000)).

In the present case, Sgt. Meisel observed a bulge in the
front of appellant=s pants, and believed the object was a weapon.  Sgt. Meisel conveyed this information to the
uniformed officer who patted appellant down. 
According to Deputy Palcios, the object was located in an area where
people commonly carry weapons.  Deputy
Palcios also explained they thought it suspicious appellant had not entered the
metal detector area at the airport. 
These specific and articulable facts reasonably led the officers to
conclude appellant might possess a weapon. 
See Roy, 55 S.W.3d at 157 (holding pat down at airport justified
after officer observed bundle under suspect=s clothing near waist); see also
Pennsylvania v. Mimms, 434 U.S. 106, 111B12, 98 S. Ct. 330, 334 (1977)
(concluding bulge in driver=s jacket permitted officer to conclude driver was armed and
posed serious and present danger to officer=s safety).[4]

D. 
Seizure of the cocaine.  Finally, appellant
argues the Terry frisk did not permit removal of items that do not feel
like weapons.  In the present case,
Officer Spears, the uniformed officer who conducted the search, did not testify
at the suppression hearing, and the record, therefore, is devoid of any evidence
of his tactile perceptions as he patted appellant down.[5]

Nevertheless, according to Sgt. Meisel, Officer Spears, in
the course of conducting the frisk, said, “Yeah, here it is.”  Sgt. Meisel, who had just informed Spears he
thought appellant had a weapon, believed Spears was referring to a weapon.  Although appellant=s version of the frisk differed from
Sgt. Meisel=s, it was for the trial court to
evaluate the credibility of Sgt. Meisel=s 
testimony and determine the weight to give it.  See State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).  From this
testimony, the trial court could reasonably infer that Sgt. Meisel lifted
appellant=s shirt to remove what he reasonably
believed was a weapon.[6]  Once Sgt. Meisel lifted appellant=s shirt, however, he saw “a normal
package of kilo cocaine,” wrapped in cellophane.

At this point, reasonable suspicion ripened into probable cause
for the officers to believe appellant was then committing the offense of
possession of cocaine, thus permitting the officers to arrest appellant without
a warrant.  See Tex. Code Crim. Proc. Ann. art. 14.01
(Vernon 1977) (permitting warrantless arrest when offense committed in officer=s presence or within his view).  The officers took appellant to their office,
where they removed the cocaine.  The
seizure of the cocaine was justifiable as incident to appellant=s arrest.  See Rogers v. State, 774 S.W.2d 247,
264 (Tex. Crim. App. 1989) (stating searches of person and area within person=s immediate control are excepted from
warrant requirement when incident to lawful arrest of such person and otherwise
proper in scope).

 




We overrule appellant=s sole issue.

We affirm the judgment of the trial court.

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed January 30, 2003.

Panel consists of
Justices Yates, Anderson, and Frost.

Publish  C Tex.
R. App. P. 47.2(b).

 

 











[1]  See Terry
v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968).





[2]  Indeed, the Illinois
v. Wardlow Court noted its holding in Florida v. Royer that when an
officer without reasonable suspicion or probable cause approaches an
individual, the individual has a right to ignore the police and go about his
business.  528 U.S. 119, 125, 120 S. Ct.
673, 676 (2000)  (citing Florida v.
Royer, 460 U.S. 491, 498, 103 S. Ct. 1319, 1324 (1983)).  Any refusal to cooperate, without more, does
not furnish the minimal level of objective justification needed for a detention
or seizure.  Id. (citing Florida
v. Bostick, 501 U.S. 429, 437, 111 S. Ct. 2382, 2387 (1991)).  But unprovoked flight is more than mere
refusal to cooperate.  Flight by its very
nature is not going about one=s own business; in fact, it is just the opposite.  Id. 
The Wardlow Court concluded that allowing officers confronted
with such flight to stop the fugitive and investigate further is consistent
with the individual’s right to go about his business or stay put and remain
silent in the face of police questioning. 
Id.  





[3]  Appellant
contends his behavior was no different from that of  “thousands of people who go to the airport to
buy airline tickets for flights at a later date.”  In Woods v. State, however, the Texas
Court of Criminal Appeals held Athe >as consistent with innocent activity as with criminal
activity= construct is no longer a viable test for determining
reasonable suspicion.@  956 S.W.2d 33,
38 (Tex. Crim. App. 1997).  When such
activity creates an ambiguity, Terry recognizes that the officers can
detain the individuals to resolve the ambiguity.  See Terry, 392 U.S. at 30, 88 S. Ct.
at 1884B85.





[4]  Appellant
suggests the officers’ testimony failed to establish a reasonable fear for
their safety.  Regardless of whether an
officer testifies he was afraid, a court analyzes the validity of the search by
determining whether the facts available to the officer at the time of the
search would warrant a reasonably cautious person to believe the action taken
was appropriate.  O’Hara v. State,
27 S.W.3d 548, 551 (Tex. Crim. App. 2000). 
Here, Officer Meisel testified that, after observing the object in
appellant=s waistband, he was concerned about his own and his
partner=s safety





[5]  Even when the
issue is what an officer felt in the patdown, “because ‘weapons are not always
of an easily discernible shape,’ it is not inevitably essential that the
officer feel the outline of a pistol or something of that nature.”  4 Wayne
La Fave, Search and Seizure ' 9.5(c) (3d ed. 1996).





[6]  “[W]e will
assume that the trial court made implicit findings of fact supported in the
record that buttress its conclusion.”  Carmouche,
10 S.W.3d 323, 328 (Tex. Crim. App. 2000).