Affirmed and Opinion filed February 8, 2007








Affirmed and Opinion filed February 8, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00040-CR

____________

 

CHARLES DEWEY WESTBROOK, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 339th
District Court

Harris County, Texas

Trial Court Cause No. 1018612

 



 

O P I N I O N

Appellant, Charles Dewey Westbrook, appeals from his
conviction for possession of cocaine.[1] 
After the trial court denied his motion to suppress unlawfully obtained
evidence, appellant pleaded guilty, and the trial court found him guilty and
assessed punishment at 12 months imprisonment.  In two issues, appellant
contends that the trial court erred in denying his motion to suppress and that
he received ineffective assistance of counsel.  We affirm.








Background

At the hearing on the motion to suppress, Officer James
Drury of the Harris County Sheriff=s Office testified
that on March 3, 2005, he and Sergeant Sean Conrad responded to a call at the
Haverstock Apartments in separate police vehicles.  Drury explained that the
complex is rather large and that 60 percent of the calls in that area on any
given night originate from the complex.  When the officers arrived, appellant=s vehicle was
parked sideways, blocking the sole entrance to the complex.  Drury stopped
behind appellant=s vehicle, and Conrad stopped in front of
appellant=s vehicle.  The officers Asat there and
waited,@ but when
appellant did not move, they approached his vehicle on foot.  Drury approached
the driver=s side, and Conrad approached from the front of the
vehicle.  Drury said that when appellant looked up at Conrad, appellant
immediately put his vehicle in reverse and started backing up, forcing Drury to
move out of the way.  Drury said A[s]top, stop,
stop,@ but appellant
continued backing up until finally stopping inches from the bumper of Drury=s vehicle.








Drury asked appellant, AWhat are you doing? 
Are you okay?@  Appellant replied, AI didn=t do it.  Why are
you doing this to me?  I didn=t do it.@  Drury said that
appellant=s responses made him think that appellant was probably
either extremely nervous or on some type of narcotics.  Appellant continued
speaking very rapidly, repeating the same phrases.  Appellant then reached
under his seat, which Drury said was an officer safety hazard because he may
have had a weapon underneath the seat.  Drury therefore ordered appellant to
stop and exit the vehicle.  Appellant exited very quickly, slammed the door
shut, and started to reach into his pocket, while still repeating the same
phrases.  Drury twice said, AStop.  Keep your hands where I can see
them,@ but appellant
continued to try to reach into his pocket.  Drury grabbed appellant=s hand to keep it
out of the pocket.  The minute Drury touched appellant, appellant became
combative, pulling away, twisting sideways, and still trying to get his hand in
the pocket.  By that time, Sergeant Conrad had come around the vehicle, and
Drury instructed appellant to AStop.  Quit resisting.  Keep your hands up
where we can see them.@  Appellant continued reaching into his
pocket.  The officers then told him he was under arrest and to put his hands
behind his back, but appellant dauntlessly continued his efforts.  The officers
eventually forced appellant to the ground and handcuffed his hands behind his
back.  Drury searched appellant=s pocket to see what appellant had been
reaching for and discovered a small baggy of cocaine.  The officers did not
find any weapons or any other contraband on appellant or in his vehicle.

On cross-examination, Drury stated that by blocking the
exit, appellant was not breaking any law.  Drury said that he approached
appellant to check on him, and if appellant was fine, Drury was going to ask him
to move.  Drury acknowledged that once the two officers parked their vehicles
in front of and behind appellant=s vehicle,
appellant=s way was blocked.  He said that given the high-crime
nature of the apartment complex, appellant had to be considered dangerous
because he was there and because he acted suspiciously.  He said that he
probably intended to do a pat down search of appellant as soon as appellant
exited the vehicle.  He also stated that he considered appellant under arrest
when he began physically resisting by continually attempting to reach into his
pocket.  At that point, Drury told appellant that he was under arrest and to
put his hands behind his back.

Sergeant Sean Conrad, also of the Harris County Sheriff=s Office,
testified that around 3 a.m. on March 3, 2005, he and Officer Drury arrived at
the Haverstock Hill Apartments in response to a call from the complex.  The
officers could not enter the premises, however, because appellant=s vehicle was
parked across the entrance.  Conrad parked his vehicle in front of appellant=s vehicle, and
Drury parked his vehicle behind appellant=s vehicle.  They
sat there for a few seconds, but when appellant did not move his vehicle, the
officers got out of their vehicles and approached appellant=s vehicle on
foot.  Conrad stated that the situation raised suspicions because appellant
would have had to have done some maneuvering in order to get his vehicle
positioned in that space, and they did not know why he would park in that
manner.








Appellant put his car in reverse, and Conrad and Drury both
told him to stop.  Drury then approached the driver=s side of the
vehicle and began speaking to appellant, while Conrad moved to the passenger=s side and shined
his flashlight in the vehicle to look for weapons Aand things like
that.@  Although Conrad
could not hear all of the conversation clearly, he could tell that appellant
was being defensive, and he could see that appellant was Anervous,@ Ajittery,@ and Afidgety.@  Conrad said that
he Aheard [appellant]
say, >Why are you
messing with me?  I didn=t do it,= things like that.@  Appellant then
reached under his seat, and Conrad felt that appellant may have been reaching
for a weapon.  Drury asked appellant to step out of the car, which was proper
procedure given the possibility that appellant may have had a weapon. 
Appellant exited the vehicle, while continuing to say, AWhy are you
messing with me?  I didn=t do it.@  Conrad moved
around the vehicle at that point, and appellant kept trying to put his hand in
his pocket.  Drury ordered appellant not to do so and to relax, but appellant
continued to reach into his pocket.  Drury then grabbed appellant=s hand to keep him
from putting it in his pocket.  Appellant began to struggle and pull away, so
Conrad also grabbed appellant, and he and Drury took appellant to the ground. 
They then handcuffed appellant and patted him down for weapons.  On
cross-examination, Conrad acknowledged that he and Drury parked their vehicles
so that appellant was blocked in and could not have left without hitting one of
the officer=s vehicles.  He further agreed that prior to being
blocked in and other than Abeing parked wrong,@ appellant had not
done anything wrong.  Conrad opined that at the point that appellant Ajerked away@ from Drury,
appellant was resisting Drury=s attempt to search, detain, or arrest
him.  Conrad acknowledged, though, that his view was obscured at times, and the
only way that he knew a search had commenced by that point was that Drury later
told him so.  He stated, however, that when appellant avoided Drury=s grasp, he was
resisting detention.

No other witnesses were called.  At the conclusion of
testimony and argument, the trial court stated that (1) the officers actions in
approaching appellant=s vehicle were reasonable given that he
was blocking a driveway that they were attempting to enter; (2) Drury did not
act improperly in ordering appellant out of the vehicle after appellant reached
under his seat; and (3) the ultimate arrest and search of appellant was also
proper.  The court denied the motion to suppress.








Motion to Suppress

In his first issue, appellant contends that the trial court
erred in denying his motion to suppress because the officers lacked sufficient
probable cause, rendering the stop, detention, and arrest illegal.  We review a
trial court=s ruling on a motion to suppress evidence under an
abuse of discretion standard.  Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996).  At a suppression hearing, the trial judge is the sole
fact finder.  Arnold v. State, 873 S.W.2d 27, 34 (Tex. Crim. App.
1993).  We give almost total deference to the trial court=s determination of
historical facts when supported by the record, particularly if the findings
turn on witness credibility and demeanor.  State v. Ross, 32 S.W.3d 853,
856 (Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  The same deference is accorded to determinations of mixed questions of
law and fact if their resolution depends upon witness credibility and
demeanor.  Ross, 32 S.W.3d at 856.  Issues that present purely legal
questions are considered under a de novo standard.  Id.  We will sustain
the trial court=s ruling if it is reasonably supported by
the record and is correct on any theory of law applicable to the case.  Villarreal,
935 S.W.2d at 138.








There are three basic categories of interaction between
police officers and citizens:  encounters, investigative detentions, and
arrests.  Francis v. State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). 
An encounter is a friendly exchange of pleasantries or mutually useful
information.  Id.  (citing Terry v. Ohio, 392 U.S. 1 (1968)).  In
an encounter, a police officer is not required to possess any particular level
of suspicion because the citizen is under no compulsion to remain.  Id. 
In an investigative detention (also known as a temporary detention or ATerry‑stop@), however, the
officer must be able to articulate specific facts that, in light of his
experience and personal knowledge, together with inferences from those facts,
reasonably warrant the intrusion on the freedom of the citizen stopped.  Id. 
(citing Terry, 392 U.S. at 21).  In other words, to justify a detention,
there must be a reasonable suspicion by the officer that some unusual activity
is or has occurred, that the detained person is connected with the activity,
and that the unusual activity is related to the commission of a crime.  Id. 
An investigative detention is a seizure under which the citizen is not free to
leave, at least for some period of time.  Id.  An arrest imposes the
highest level of intrusion and thus requires the highest level of suspicion, or
Aprobable cause,@ that the citizen
involved has engaged in or is engaging in criminal activity.  Id.
(citing Henry v. United States, 361 U.S. 98, 103 (1959)).  The seizure
involved in an arrest will generally not be brief.  Id.  The key
questions in determining whether an interaction is an encounter or a detention
are whether a reasonable person would have believed he or she was free to leave
and whether they actually yielded to the officer=s show of
authority.  Id.  The key issue in determining whether an interaction
constitutes a detention or an arrest is whether a reasonable person would have
believed the seizure was to be brief.

It is also important to note, particularly in the present
case, that these differing levels of interaction often flow from one into the
next, and sometimes the lines between them may blur in any given transaction.  See
id.  A[W]hat may begin as a consensual encounter can readily
become an investigative detention, which may evolve into an arrest.@  Id.

Appellant initially asserts that the officers positioned
their patrol cars to block him in, and that Officer Drury=s action of
approaching appellant was not justified because appellant was not guilty of any
offense.  Appellant additionally argues that the officers= questioning and
detaining of him Awas not reasonably related in scope to the
circumstances that justified the interference in the first place.@  Lastly,
appellant argues that his arrest was not reasonable.  He asserts that A[i]t is a broad
leap from checking to see if a person who is sitting in his vehicle is okay, to
arresting the person for felony possession.@  In short,
appellant contends that the officers acted in violation of his constitutional
rights during the entire episode.








There is some suggestion in the officers= testimony that it
would have been difficult for appellant to just drive away once the officers
arrived and positioned their vehicles in front of and behind appellant=s vehicle. 
However, the officers each testified that they were responding to a call from
the apartment complex, appellant was blocking the only entrance to the complex,
and appellant did not drive away when the officers pulled up and waited for him
to vacate the entrance.  Officer Drury further testified that he and Sergeant
Conrad stopped in the only acceptable spots that they could to avoid blocking
the street.[2] 
The record supports the conclusion that the officers= conduct upon
arrival was reasonable under the circumstances and constituted at most an
encounter and not a detention.  Therefore, no level of suspicion was required
at this point.  See Francis, 922 S.W.2d at 178.

When appellant did not vacate the entrance, Officer Drury
exited his own vehicle and approached to see if appellant was okay.  He
testified that if appellant was okay, he was simply going to ask appellant to
move.  The situation was at this point still an encounter, as a police officer
may certainly approach a citizen who is blocking an apartment complex entrance,
particularly when the officer is attempting to respond to a call from the
complex.  However, the officers= suspicions were reasonably beginning to
elevate at this point.  The complex was situated in a high crime area, and it
is certainly unusual, as Sergeant Conrad stated, for a person to block an
apartment complex entrance in this fashion.  When appellant spotted Conrad,
appellant immediately put his vehicle in reverse and started backing up.  Drury
said A[s]top, stop,
stop,@ as appellant was
about to run into Drury=s vehicle.  Drury asked appellant, AWhat are you
doing?  Are you okay?@  In response, appellant began speaking
rapidly and repeating himself, saying:  AI didn=t do it.  Why are
you doing this to me?@  Drury said that appellant=s responses made
him think that appellant was probably either extremely nervous or on some type
of narcotics.  Sergeant Conrad supported this assessment when he testified that
appellant appeared nervous, jittery, and fidgety.  Appellant then reached under
his seat, and Drury ordered him out of the vehicle.








At this point, having been ordered out of his vehicle by a
police officer, a reasonable person would not have felt free to leave;
therefore, a temporary detention had begun.  See Francis, 922
S.W.2d at 178.  Officer Drury supported the detention by explaining that
appellant=s behavior and conduct presented an officer safety
hazard because he may have had a weapon underneath the seat.  Sergeant Conrad echoed
these same concerns in his testimony.  Nervous behavior and furtive movements
may constitute factors in determining reasonable suspicion for a detention.  See
Lippert v. State, 664 S.W.2d 712, 721 (Tex. Crim. App. 1984) (holding that
officer had no justification for detention where, among other factors,
defendant had made Ano furtive gestures or sudden movements
towards a pocket or other place where a weapon might be concealed@); McCraw v.
State, 117 S.W.3d 47, 54  (Tex. App.CFort Worth 2003,
pet. ref=d) (noting absence
of any testimony defendant made furtive gestures that could have led officer to
believe defendant had a weapon in the vehicle); Gaines v. State, 99
S.W.3d 660, 667 (Tex. App.CHouston [14th Dist.] 2003, no pet.)
(noting that United States Supreme Court opinions have recognized nervous,
evasive behavior as a pertinent factor in determining reasonable suspicion for
a detention).  Further, a temporary detention is an appropriate method to
ensure officer safety under circumstances in which an officer reasonably feels
threatened.  See Rhodes v. State, 945 S.W.2d 115, 117-18 (Tex. Crim.
App. 1997).  Accordingly, the trial court did not err in holding that Drury had
articulated specific facts reasonably warranting the detention.








After appellant exited the vehicle, he began trying to
reach in his pocket.  Given appellant=s prior suspicious
behavior, Drury could have been reasonably concerned that appellant may have
been reaching for a weapon.  See Lippert, 664 S.W.2d at 721.  Drury
repeatedly instructed appellant to stop, and when appellant refused, Drury
physically prevented appellant from pushing his hand into his pocket.  Yet,
appellant still continued to try, twisting and pulling away from Drury.  Drury
testified that he wanted to prevent appellant from reaching into the pocket and
also wanted to search the pocket.  Drury could then also have had a reasonable
suspicion that appellant was resisting an attempt to search him.  See Tex. Penal Code Ann. ' 38.03 (Vernon
2002) (criminalizing resisting search by a police officer).  By the time Drury
and Conrad brought appellant to the ground and handcuffed him, an innocent
person in appellant=s shoes could have believed he or she was
under arrest and was not going to be released anytime soon.  See Francis,
922 S.W.2d at 178.  However, it is clear that at each step it was appellant=s conduct, and not
the officer=s, that escalated the situation.  Given appellant=s behavior and the
escalating sequence of events, the trial court did not err in finding that the
officers possessed the requisite suspicion to render appellant=s arrest
reasonable.  Having found that the record supports the trial court=s holding that the
officers possessed the appropriate level of suspicion at each stage of the episode,
we overrule appellant=s first issue.

Assistance of Counsel








In his second issue, appellant contends that he received
ineffective assistance of counsel because his counsel did not permit him to testify
and did not call any other witnesses at the hearing on the motion to suppress. 
The Sixth Amendment to the United States Constitution guarantees the right to
reasonably effective assistance of counsel in criminal prosecutions.  U.S. Const. amend. VI; McMann v.
Richardson, 397 U.S. 759, 771 n.14 (1970).  In reviewing an ineffective
assistance claim, an appellate court Amust indulge a
strong presumption that counsel=s conduct [fell] within the wide range of
reasonable professional assistance; that is, [appellant] must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.@  Strickland v.
Washington, 466 U.S. 668, 689 (1984).  Under the two‑pronged Strickland
test, in order to demonstrate ineffective assistance of counsel, a defendant
must first show that counsel=s performance was deficient, i.e.,
that his assistance fell below an objective standard of reasonableness; second,
a defendant must affirmatively prove prejudice by showing a reasonable
probability that, but for counsel=s unprofessional
errors, the result of the proceeding would have been different.  Thompson v.
State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.  Id. at 813. 
Appellant bears the burden of proving by a preponderance of the evidence that
counsel was ineffective.  Id.  In the majority of cases, the record on
direct appeal is simply undeveloped and cannot adequately reflect the alleged
failings of trial counsel.  Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998).  This is particularly true when the alleged deficiencies are
matters of omission and not of commission that may be revealed in the record.  Id. 
A proper record is best developed in a habeas corpus proceeding or in a motion
for new trial hearing.  Jensen v. State, 66 S.W.3d 528, 542 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).  The case before us is not a habeas
corpus proceeding, and appellant did not file a motion for new trial.

Although appellant is correct that he did not testify at
the hearing on the motion to suppress and that his counsel did not call any
other witnesses, the record is completely silent as to what appellant or any
other uncalled witness would have said had they testified.  A claim of
ineffective assistance of counsel based on counsel=s failure to call
witnesses does not succeed in the absence of a showing that such witnesses were
available to testify and that the defendant would have benefitted from their
testimony.  Wilkerson v. State, 726 S.W.2d 542, 550-51 (Tex. Crim. App.
1986); Wade v. State, 164 S.W.3d 788, 796 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Accordingly, on the record before us, appellant cannot
rebut the presumption that his counsel was effective; thus, he cannot satisfy
the first prong of Strickland.  See Thompson, 9 S.W.3d at 812. 
His second issue is overruled.

We affirm the trial court=s judgment.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed February 8, 2007.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Appellant=s
name appears alternatively in the record as AWestbrook@ and AWestbrooks.@  No issue is made on appeal regarding the variation.





[2]  On cross-examination, Drury acknowledged that there
was a parking lot nearby, but he explained that it would not have been an
acceptable place for the officers to wait for appellant to leave.