Lawrence Howard **FRANCIS**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 0627–95, 0628–95.

Court of Criminal Appeals of Texas, En Banc.

May 15, 1996.

Bruce W. Cobb, Beaumont, for appellant.

B. Warren Goodson, Jr., Asst. Dist. Atty., Galveston and Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

McCORMICK, Presiding Judge.

Appellant was convicted of, among other things, burglary of a habitation and escape. The Court of Appeals affirmed appellant's convictions. *Francis v. State,* 896 S.W.2d 406 (Tex.App.—Houston [1st Dist.] 1995) (not yet reported). We granted appellant's petition for discretionary review to address the Court of Appeals' holding that a police officer's initial seizure of appellant was "a classic example of a valid temporary investigative detention."

We now find that our decision to grant appellant's petition for discretionary review was improvident. See Tex.R.App.Pro.

202(k). Appellant's petition for discretionary review is dismissed.

CLINTON, J., dissents.

BAIRD, Judge, concurring and dissenting on appellant's petition for discretionary review.

Appellant was convicted of burglary of a habitation and felony escape and was sentenced, pursuant to a plea agreement, to two concurrent five-year sentences. Appellant appealed the denial of a motion to suppress evidence. The Court of Appeals affirmed. *Francis v. State*, 896 S.W.2d 406 (Tex.App.—Houston [1st Dist.] 1995). We granted appellant's petition for discretionary review to address the Court of Appeals' holding that the initial seizure of appellant was an investigative detention rather than an arrest. Contrary to the majority opinion, the decision to grant review in this case was *not* improvident. We granted review because the case presents a frequently recurring legal issue where our statutory and decisional authority is inconsistent.[1] Therefore, I dissent to the decision to dismiss this petition. However, for the following reasons, I concur that the judgment of the Court of Appeals should ultimately be affirmed.

## I.

On July 3, 1993, the complainants found their home burglarized. While waiting for the police, one of the complainants noticed a man, later identified as appellant, carrying two bags inside the fenced apartment complex. The complainants later saw appellant walking away from the complex with a duffel bag that one of the complainants thought he recognized as his own. When a police officer arrived, the complainants gave this information to the officer and pointed to appellant, who was approximately 100 yards away.

The officer drove to appellant and asked his name. After exiting the patrol car and conducting a weapons pat-down, the officer placed appellant in the patrol car and advised appellant that he had been observed leaving the area of a burglary and that they were going to return to the scene. The officer testified he had reason to believe that appellant was a suspect and that the bags were involved in the burglary. He also testified appellant was not free to leave. The officer placed the bags on the trunk of the patrol car and returned to the apartment complex and the waiting complainants.

As appellant sat in the patrol car, the complainants identified the bags and described items missing from their apartment, which the officer then removed from the bags. The officer opened the car door, advised appellant that he was under arrest for burglary and read him the *Miranda* warnings.[2] While the officer reached for his handcuffs, appellant fled, but was apprehended after a brief chase.

Appellant contended his being placed in the patrol car exceeded the limited restraint allowed for an investigative detention and was, therefore, an illegal arrest. On this basis appellant sought to suppress the evidence. The trial judge denied appellant's motion to suppress.

On direct appeal, appellant contended the trial judge erred in denying the motion to suppress. The Court of Appeals affirmed. The Court of Appeals analyzed the conflicting standards that have been used to distinguish an investigative detention from an arrest. Rejecting the previous standards, which are fraught with difficulty, the Court formulated a new approach based on its reading of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the trend from this Court. *Francis*, 896 S.W.2d at 411. The Court adopted a totality of the circumstances standard to determine whether there has been an arrest or a temporary investigative detention. *Id.* Using this standard, the

---

1. As an example of how frequently the instant issue arises, we granted review in *Nargi v. State*, 895 S.W.2d 820 (Tex.App.—Houston [14th Dist.] 1995, pet. grt'd), but today, we also dismiss that petition. 922 S.W.2d 180 (Tex.Cr.App.1996). Additionally, the instant issue is presently pending before us in another petition. *Rhodes v.*

*State*, 913 S.W.2d 242 (Tex.App.—Fort Worth 1995, pet. pending). In theory, the issue arises in every criminal case involving a warrantless arrest.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Court held appellant's initial interaction with the police officer was a lawful investigative detention that led to an arrest only after probable cause arose. *Id.*, at 412.

## II.

There are three recognized categories of interaction between the police and citizens: encounters, investigative detentions and arrests.

The Fourth Amendment is not implicated in every interaction between police officers and citizens. *Terry*, 392 U.S. 1, 88 S.Ct. 1868. An encounter is a friendly exchange of pleasantries or mutually useful information. *Id.*, at 13, 88 S.Ct. at 1875–76. "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In an encounter police are not required to possess any particular level of suspicion because citizens are under no compulsion to remain. *Hawkins v. State*, 758 S.W.2d 255, 259 (Tex. Cr.App.1988); *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Cr.App.1986). However, in order for investigative detentions and arrests to be legal, particular levels of suspicion are required.

The concept of investigative detentions originated with *Terry*, which sought to ensure police action that fell technically short of an arrest was not immune from Fourth Amendment protection. In an investigative detention, also known as a temporary detention or *Terry*-stop, the officer must have specific articulable facts that, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879–80. There must be a reasonable suspicion by the officer that some unusual activity is or has occurred, that the detained person is connected with the activity and that the unusual activity is related to the commission of a crime. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Cr.App.1987); *Daniels v. State*, 718 S.W.2d 702, 705 (Tex.Cr.App.1986); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Cr.App.1983). An investigative detention is a seizure under which the citizen is not free to leave, at least for some period of time.

The final level of interaction, an arrest, is also a seizure. It is axiomatic that an arrest must be accompanied by probable cause to believe that a person has engaged in or is engaging in criminal activity. *Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). This high level of suspicion is meant to protect law-abiding citizens from the high level of intrusion that accompanies an arrest. Unlike an investigative detention, where the seizure may end within a brief period of time, the seizure involved in an arrest will not be brief.

Although the three categories of interaction are easily labeled, they are not so easily distinguished. This is because there is a continuum of human interaction, and what may begin as a consensual encounter can readily become an investigative detention, which may evolve into an arrest.[3] Because the three levels of interaction involve attendant rights and responsibilities, it is essential that peace officers and citizens alike know into which category their interaction belongs.

### A.

The controlling distinction between an encounter and either an investigative detention or an arrest is whether there has been a seizure. A seizure occurs when a reasonable person would believe he or she was not free to leave, and whether that person has actually yielded to the officer's show of authority. *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Cr.App.1995) (plurality opinion). In short, interaction *without* a seizure is an encounter.

---

**3.** One study shows that less than two percent of investigative detentions evolve into arrests. George E. Dix, *Nonarrest Investigatory Detentions in Search and Seizure Law*, 1985 Duke L.J. 849, 875 (1985).

However, the standard for distinguishing between an investigative detention and an arrest is not so clear because both are seizures. The standard for determining whether a seizure is an investigative detention or an arrest has been variously termed as: whether one's liberty of movement has been restricted or restrained, *Henry v. U.S.*, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *Hardinge v. State*, 500 S.W.2d 870 (Tex.Cr.App.1973); *Hoag*, 728 S.W.2d at 379; whether a person has been actually placed under restraint, Tex.Code Crim.Proc.Ann. art. 15.22 (Vernon 1977); and whether a reasonable person would have believed that he was not free to leave, *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877; *Hawkins*, 758 S.W.2d at 259. However, these standards do not serve to distinguish investigative detentions from arrests because they focus upon their similarity: both are seizures.[4] Consequently, this is not the element upon which a functional distinction can rest.

The Court of Appeals recognized the difficulty posed by the previous attempts to distinguish between investigative detentions and arrests. In formulating a new standard, however, the Court focused solely on the totality of the circumstances to determine whether there was an investigative detention or an arrest. *Francis*, 896 S.W.2d at 411. However, this approach does not encompass the core distinction between the two, namely their magnitude. An investigative detention is meant to be a limited intrusion, both in time and scope, *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882; *United States v. Sharpe*, 470 U.S. 675, 684–86, 105 S.Ct. 1568, 1574–75, 84 L.Ed.2d 605 (1985); *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *Johnson*, 912 S.W.2d at 235, while an arrest is a high level of intrusion that will be longer in duration.

## B.

In order to be effective, the standard must focus on the magnitude of the seizure and it must include the reasonable beliefs held by the citizen at the time of the seizure. Therefore, to distinguish between an investigative detention and an arrest, the standard should be whether, given the totality of the circumstances, a reasonable person would believe the seizure was to be brief. The reasonable person standard assumes a reasonable person innocent of criminal activity. *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). In assessing whether a reasonable person would believe the seizure was to be brief, there are several considerations that are significant. First, the actual length of time the seizure lasts, while important, *Sharpe*, 470 U.S. 675, 105 S.Ct. 1568 (1985), is not dispositive. The totality of the circumstances are judged by the belief of the reasonable person at the time of the seizure, not a person with the benefit of hindsight. A seizure that lasts an extended time can erode a reasonable belief that the seizure will be brief, but, it is erroneous to assume that a reasonable person would have believed that the seizure was to be brief simply because it actually was brief.

Another important element is the investigation conducted by the officer. The requirement that an investigative detention actually be investigative, *Burkes v. State*, 830 S.W.2d 922, 925 (Tex.Cr.App.1991), contributes to the citizen's sense about the nature of the seizure. Therefore, the officer's questions help to define the seizure because they inform the citizen of the reason behind the detention. Knowing the nature of the detention will in turn help the citizen to assess how long the seizure is likely to last. The officer's questions must be such that they either vitiate or confirm his reasonable, articulable suspicions, thereby leading to either release or arrest, respectively.

In addition to these factors, there are certain actions, especially when done in combi-

---

4. Part of the confusion appears to stem from Tex.Code Crim.Proc.Ann. art. 15.22's definition of an arrest: "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." This definition, which predates *Terry*, focuses solely on the restraint placed upon a person. It does not incorporate the reasoning employed by the Supreme Court and the courts of Texas that allows for detentions upon less than probable cause. Therefore, art. 15.22 is legislatively obsolete and of no help in our efforts to define the difference between investigative detentions and arrests.

nation, that would lead a reasonable person to believe he or she will not shortly be free to leave, and is, therefore, under arrest. These factors, derived from prior cases addressing the nature of the seizure, include: handcuffs, *Delk v. State,* 855 S.W.2d 700 (Tex.Cr.App. 1993); *Burkes,* 830 S.W.2d 922; *Amores v. State,* 816 S.W.2d 407 (Tex.Cr.App.1991); drawn weapons, *Amores,* 816 S.W.2d 407; approach by officers far outnumbering the number of citizens, *Joseph v. State,* 865 S.W.2d 100 (Tex.App.—Corpus Christi 1993); use of threatening language, *Amores,* 816 S.W.2d 407; moving the citizen to another location, *Delk,* 855 S.W.2d 700 (transport to station); *Joseph,* 865 S.W.2d 100 (transport to scene); *Davis v. State,* 783 S.W.2d 313 (Tex.App.—Corpus Christi 1990) (transport to scene); use of physical force to restrain the citizen, *Joseph,* 865 S.W.2d 100; and, blocking the person's vehicle, *Amores,* 816 S.W.2d 407. The import of these factors is their amplification of a reasonable person's sense that he or she will not soon be free to leave, in most cases because he or she is physically incapable doing so.

### III.

Applying this standard to the instant case, I would hold appellant's initial interaction with the police officer was an investigative detention, *not* an arrest. The initial identification made by the complainants provided the officer with the reasonable, articulable suspicion required in order to make the detention. The officer asked appellant his name, placed appellant in the patrol car without further restraint, told him the reason for the detention and their destination. The officer imparted sufficient information to appellant to give a reasonable person in the defendant's position a sense about the boundaries of the seizure and how long the seizure was meant to last.

The officer then moved appellant a short distance to the scene of the burglary, where appellant remained in the patrol car while the officer pursued his investigation. It is unclear from the record how long the seizure

actually lasted, but given that the drive was short and the complainants were waiting outside for the officer, I would find it was not long enough to erode a reasonable person's belief that the seizure would be brief. The seizure of appellant did not evolve from an investigative detention to an arrest until the property was identified, thus providing the police officer with probable cause to arrest appellant.

For these reasons, I would address the merits of appellant's ground for review and ultimately affirm the judgment of the Court of Appeals.[5]

OVERSTREET, J., joins this opinion.

---

**5.** I would dismiss appellant's petition for discretionary review in Cause No. 628–95 which deals with his escape conviction. As the Court of Appeals correctly noted, the offense of escape has no defense for unlawfulness on the part of the officers making the arrest. *Francis,* 896 S.W.2d at 407, n. 2.