Gregory Alan **BURKEHALTER,**
**Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 06–00–00123–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 21, 2000.

Decided Jan. 5, 2001.

Phillip Swisher, Conroe, for appellant.

Frank H. Bass Jr., Montgomery County Attorney, Robert A. Rosenquist, Assistant County Attorney, Conroe, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Gregory Burkehalter appeals his conviction for misdemeanor possession of marihuana. Burkehalter filed a motion to suppress the marihuana as the product of an illegal search, but the trial court denied his motion. Thereafter, Burkehalter pled guilty. The trial court deferred a finding of guilt and placed Burkehalter on one year's community supervision. Burkehalter filed a notice of appeal pursuant to TEX.R.APP.P. 25.2(b)(3)(B).[1] He challenges the trial court's decision to overrule his suppression motion.

The suppression hearing record reveals that Burkehalter was stopped for driving his motorcycle without a helmet. In the course of the stop, the officer smelled marihuana. A subsequent search of Burkehalter revealed the contraband. Burkehalter contends that the officer did not have a proper basis on which to make the initial stop.

At a suppression hearing, the trial court is the exclusive trier of fact and

---

1. TEX.R.APP.P. 25.2(b)(3)(B) provides that if the appeal is from a judgment rendered on the defendant's plea of guilty, and the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the notice must specify that the substance of the appeal was raised by written motion and ruled on before trial.

judge of the credibility of the witnesses and the weight of their testimony. *Green v. State,* 934 S.W.2d 92, 98 (Tex.Crim.App. 1996). Therefore, an appellate court must view the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim.App.1996). Further, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.; Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We are also to afford such deference to a trial court's ruling on the "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* Questions not turning on credibility and demeanor may be reviewed by appellate courts *de novo. Id.*

A police officer may lawfully stop a motorist who commits a traffic violation. *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Crim.App.1993). A routine traffic stop closely resembles an investigative detention. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). An investigative detention is a seizure, *Francis v. State,* 922 S.W.2d 176, 178 (Tex. Crim.App.1996); thus, it must be reasonable to meet the standards required by the United States and Texas Constitutions. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.

To determine the reasonableness of an investigative detention, we apply the guidelines set out by the United States Supreme Court in *Terry v. Ohio:* (1) whether the officer's action was justified at its inception; and (2) whether it was rea-

sonably related in scope to the circumstances that initially justified the interference. *See Davis v. State,* 947 S.W.2d 240, 242 (Tex.Crim.App.1997) (citing *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Burkehalter does not challenge whether the scope of the detention was reasonably related to the circumstances justifying the initial stop; rather, he contends that the stop was made without adequate justification.

To make an investigative detention, an officer must have a reasonable suspicion; that is, the officer must be able to point to specific, articulable facts that, taken together with rational inferences from those facts, reasonably warrant the detention. *Id* . at 242. In evaluating the reasonableness of an investigative detention, we must apply an objective standard by asking whether, in light of the officer's experience, the facts available would justify a person of reasonable caution in believing the action taken was appropriate. *Id.* In short, reasonable suspicion requires that "there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Id.* at 244 (quoting *Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Crim.App.1992)).

Burkehalter contends that the officer was not justified in making the stop because an officer cannot stop a motorcycle operator for failing to wear a helmet. However, TEX.TRANSP.CODE ANN. § 661.003(a) (Vernon Supp.2001) makes it an offense to operate a motorcycle on a public street or highway without protective headgear. The statute provides an exception for persons who (1) are at least twenty-one years old, and (2) have successfully completed a motorcycle operator training and safety course, or (3) are covered by a health insurance plan providing at least $10,000.00 in medical benefits for injuries incurred in an accident while operating a motorcycle. TEX.TRANSP.CODE ANN. § 661.003(c) (Vernon Supp.2001). Such persons may apply for a sticker, which the Department of Public Safety must issue on proper application and evidence of compli-

ance. TEX.TRANSP.CODE ANN. § 661.003(d), (e) (Vernon Supp.2001). A person displaying such a sticker is presumed to have successfully completed the motorcycle operator training and safety course or to have the required insurance coverage. TEX.TRANSP.CODE ANN. § 661.003(g) (Vernon Supp.2001). The suppression hearing evidence shows that Burkehalter did not have such a sticker.

Nevertheless, Burkehalter contends that stopping him for not wearing a helmet is like stopping a motorist to see if he has a driver's license. We disagree. Whether a motorcycle rider is wearing a helmet is a fact that is in plain view to an officer. The Texas Transportation Code makes it an offense to operate a motorcycle without a helmet. Therefore, an officer witnessing a motorcycle operator without a helmet has reasonable suspicion to make a traffic stop when the operator does not have the sticker issued by the Department of Public Safety.[2]

The trial court's judgment is affirmed.

---

2. We do not address the State's argument that a police officer has a reasonable suspicion to stop any motorcycle operator not wearing a helmet, regardless of whether that operator also is displaying the sticker issued by the Department of Public Safety. The State contends an operator might not qualify for the exception to the helmet law, but be riding a motorcycle he does not own that has a sticker affixed to it.