In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00208-CR


______________________________




CHRIS ROBINSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 025719-B




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Chris Robinson appeals his conviction for possession of cocaine in an amount greater than
400 grams with intent to deliver. He filed a Motion to Suppress the cocaine and a written statement
he made to police. The trial court overruled his motion after a hearing. Robinson later failed to
appear for his trial on the possession offense.

 At trial Robinson pleaded guilty, as part of a plea bargaining agreement, to the possession
offense and to a separate charge of felony failure to appear. The trial court sentenced him to twenty-five years' imprisonment for the possession offense and five years' imprisonment for the failure to
appear offense, and ordered both sentences to run concurrently.

 On appeal of his conviction for possession with intent to deliver, Robinson contends the trial
court erred in overruling his Motion to Suppress. Robinson has also filed an appeal from his
conviction for felony failure to appear, which we address in a separate opinion.

 At the suppression hearing, Officer Robert Bowen testified he was assigned to work narcotics
interdiction on Amtrak trains. He testified he approached Robinson on a train, identified himself as
a police officer, and informed Robinson that he was not under arrest and that he could refuse to
speak with Bowen. 

 Bowen testified he targeted Robinson because Robinson was traveling from "[Dallas] a
specific place that we see narcotics coming from, going to a particular place that we see narcotics
going to," and because he made a reservation "a couple of hours before departure time," but did not
pick up the ticket before the train left, choosing instead to pay for the ticket on the train. He testified
Robinson would not look at him as they talked. 

 Bowen testified he requested and received Robinson's consent to search his luggage. The two
men went "downstairs to the common luggage rack, which is right inside the entrance to the train." 
Robinson unfolded a garment bag on the top shelf of a luggage rack, which was about chest high to
Bowen. Robinson pulled back a thin flap to expose the contents of the bag. 

 Bowen testified he put his hand on the "flap portion of the bag" and felt a hard object. He
asked Robinson to identify the object. Robinson responded "as though he had no idea what [Bowen]
was talking about." Robinson felt inside the outer pockets of the garment bag, but acted as if he
could not locate the object. 

 Bowen testified he knocked on the object, which sounded like it was made of wood, and
asked Robinson what it was. Eventually, Robinson removed a large, rectangular bundle
approximately "ten inches long, six or seven inches wide, one and a half to two inches thick,
wrapped up with like a packing tape," inside a plastic bag. Bowen testified Robinson told him the
bundle contained cigarettes, which Robinson believed were illegal to carry across state lines. 

 Bowen testified he was suspicious of the bundle because "based on [Bowen's] experience,
that particular size, weight, and feel of the bundle typically contains a narcotic." He testified "it
appeared far to [sic] dense, too hard," and "had no give to it," unlike a cigarette carton. He also
testified, "Most people don't tape their cigarettes up to where they can't get to them." He further
testified there were dryer sheets in the plastic bag with the bundle. 

 Bowen testified Robinson refused to let him unwrap the bundle. He testified he detained the
garment bag and the bundle. When the train made a stop in Longview, Texas, a drug dog alerted on
the garment bag, which still contained the bundle. Based on this information, Bowen was able to
obtain a warrant to search the bundle, which contained cocaine. Chad John, an agent with the
Federal Bureau of Investigation (FBI), testified that Robinson later gave a voluntary statement.

 At a suppression hearing, the trial court is the exclusive trier of fact and judge of the
credibility of the witnesses and the weight of their testimony. Green v. State, 934 S.W.2d 92, 98
(Tex. Crim. App. 1996). Therefore, an appellate court must view the evidence in the record and
draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Further, the appellate court must
sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory
of law applicable to the case. Id.; Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

 The general rule is that we must afford almost total deference to the trial court's
determination of the historical facts that the record supports, especially when the trial court's
fact-findings are based on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997). We are also to afford such deference to a trial court's ruling on the
application of law to fact questions if the resolution of those ultimate questions turns on an
evaluation of credibility and demeanor. Id. We may review de novo the application of law to fact
questions not turning on credibility and demeanor. Id.

 Robinson and the State agree that Bowen's initial search of the garment bag was made with
Robinson's consent. They also agree that Robinson withdrew his consent when Bowen asked to open
the bundle. They further agree that Bowen detained the garment bag and therefore Robinson. They
disagree over whether that detention was lawful.

 An investigative detention is a seizure, Francis v. State, 922 S.W.2d 176, 178 (Tex. Crim.
App. 1996); Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995); thus, it must be
reasonable to meet the standards required by the United States and Texas Constitutions. See U.S.
Const. amend. IV; Tex. Const. art. I, § 9. To determine the reasonableness of an investigative
detention, we apply the guidelines set out by the United States Supreme Court in Terry v. Ohio: (1)
whether the officer's action was justified at its inception; and (2) whether it was reasonably related
in scope to the circumstances that initially justified the interference. See Davis v. State, 947 S.W.2d
240, 242 (Tex. Crim. App. 1997) (citing Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d
889 (1968)). Robinson does not contend the detention was excessive in scope; rather, he contends
it was not justified at its inception.

 To make an investigative detention, an officer must have a reasonable suspicion; that is, the
officer must be able to point to specific, articulable facts that, taken together with rational inferences
from those facts, reasonably warrant the detention. Davis, 947 S.W.2d at 242-43. In evaluating the
reasonableness of an investigative detention, we must apply an objective standard by asking whether,
in light of the officer's experience, the facts available would justify a person of reasonable caution
in believing the action taken was appropriate. Id. at 243. Reasonable suspicion requires "that there
is something out of the ordinary occurring and some indication that the unusual activity is related
to crime." Id. at 244 (quoting Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992)).

 Bowen's detention of Robinson was lawful. Bowen testified he targeted Robinson because
Robinson was traveling from a city known to be a source for narcotics to a city known to be a
destination for narcotics and because of the way Robinson reserved and purchased his ticket. He
testified Robinson acted evasive about the presence of the bundle in the garment bag. The object
was wrapped in packing tape and was inside a plastic bag with dryer sheets. Bowen testified that
in his experience, bundles of that particular size, weight, and feel often contain narcotics. These
facts are sufficient to justify a reasonable officer in detaining the bundle, and hence Robinson, for
further investigation.

 Robinson contends Bowen's decision was based primarily on the size, weight, and feel of the
bundle, yet the record does not show he ever handled the bundle. However, the record shows he saw
the size and shape of the bundle, watched Robinson handle it, and knocked on it with his hand. 
From this testimony, the trial court could have found Bowen's testimony credible. Further, the size,
weight, and feel of the bundle was only one of several factors justifying Robinson's detention.

 Robinson also contends the trial court erred in refusing to suppress the statement he gave to
John, the FBI agent. Robinson's theory is that his statement was a fruit of his unlawful detention. 
Assuming Robinson is correct that his statement was a product of his detention and that the taint of
the purportedly unlawful detention had not dissipated, the trial court did not err in refusing to
suppress the statement because the detention was not unlawful.

 The judgment is affirmed.




 Ben Z. Grant

 Justice


Date Submitted: August 6, 2002

Date Decided: August 27, 2002


Do Not Publish