NOS.
12-07-00039-CR

         
12-07-00040-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE
OF TEXAS,    §                      APPEAL FROM THE 

APPELLANT

 

V.        §                      COUNTY
COURT AT LAW #2

 

GERALD FRANKLIN HENRY,

APPELLEE   §                      SMITH COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            The
State of Texas appeals the trial court’s suppression orders relating to law
enforcement’s stop of Appellee Gerald Franklin Henry.  In one issue, the State argues that the stop
in question was not an arrest, but either an encounter or investigative
detention.  We affirm.

 

Background

            Appellee was charged by separate
informations with the offenses of resisting arrest, search, or transportation,
and evading arrest or detention.[1] 
Appellee filed a motion to suppress in each case, alleging that

 

[Appellee] was arrested without lawful warrant,
probable cause or other lawful authority in violation of the rights of
[Appellee] pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments of
the United States Constitution . . . .

 








The trial court
held an evidentiary hearing on Appellee’s motions.  At that hearing, counsel for Appellee made
clear that Appellee’s motions to suppress were based solely on the proposition
that the initial stop of Appellee by law enforcement was without an adequate
reason.[2]  The trial court, agreeing that the initial
stop of Appellee was an arrest, entered an order in each case suppressing

 

[t]he arrest of [Appellee] at the time and place in
question and any and all evidence which relates to the arrest, and any
testimony . . . concerning any action of [Appellee] while in detention or under
arrest in connection with this case.

 

 

This appeal
followed.

 

Suppression of Evidence

            The State argues that the stop in
question was not an arrest, but either an encounter or investigative
detention.  If the stop was an
investigative detention, the State argues that it was supported by reasonable
suspicion.

Standard
of Review and Applicable Law

            A trial court’s ruling on a motion
to suppress evidence is reviewed under an abuse of discretion standard.  Balentine v. State, 71 S.W.3d 763, 768
(Tex. Crim. App. 2002).  In reviewing a
trial court’s ruling on a motion to suppress, a reviewing court must give “almost
total deference to a trial court’s determination of historical facts” and
review de novo the trial court’s application of the law of search and
seizure.  Guzman v. State,
955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Where a trial court does not make
explicit findings of historical fact, the reviewing court examines the evidence
in the light most favorable to the trial court’s ruling and assumes the trial
court made implicit findings of fact that are supported in the record.  Balentine, 71 S.W.3d at 768.      








            The Fourth Amendment to the United
States Constitution prohibits unreasonable searches and seizures. See U.S.
Const. amend. IV.  The Fourth Amendment is not implicated in
every interaction between law enforcement and citizens.  Terry v. Ohio, 392 U.S. 1, 19
n.16, 88 S. Ct. 1868, 1879 n.16, 20 L. Ed. 2d 889 (1968).  There are three recognized categories of
interaction between law enforcement and citizens: encounters, investigative
detentions, and arrests.  Francis
v. State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).  

            An encounter is a consensual
interaction that does not require any particular level of suspicion.  Florida v. Bostick, 501 U.S. 429, 434,
111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991) (plurality opinion).  As long as the encounter is consensual, it is
not a seizure under the Fourth Amendment and no reasonable suspicion is
required.  Id.  An interaction rises beyond the level
of a consensual encounter where (1) a person is subjected to a show of
authority and submits or (2) law enforcement officers apply physical force to
limit the person’s movement.  See id.  In order to determine whether a “submitted to
‘show of authority’” rises to the level of a seizure, “a court must consider
all the circumstances surrounding the [interaction] to determine whether the
police conduct would have communicated to a reasonable person that the person
was not free to decline the officers’ requests or otherwise terminate the
[interaction].”  Id., 501
U.S. at 439, 111 S. Ct. at 2389.  This “reasonable
person” test presupposes an innocent person. 
Id., 501 U.S. at 438, 111 S. Ct. at 2388.   If an interaction rises to the level of a
seizure, it will be either an investigative detention or an arrest, depending
on the circumstances.  Francis,
922 S.W.2d at 178.  In order for
investigative detentions and arrests to be legal, particular levels of
suspicion are required.  Id.

            An investigative detention is a
seizure under which a person is not free to leave, at least for some period of
time.  Id.  In an investigative detention, the detaining
officer must have specific articulable facts that, in light of his experience
and personal knowledge, together with inferences from those facts, would
reasonably warrant the intrusion on the freedom of the person stopped. Terry,
392 U.S. at 21, 88 S. Ct. at 1879-80. 
There must be a reasonable suspicion that the person detained is, has
been, or will soon be engaged in criminal activity.  See Brother v. State, 166
S.W.3d 255, 257 (Tex. Crim. App. 2005). 
The existence of reasonable suspicion turns on an objective assessment
of the detaining officer’s actions in light of the facts and circumstances
confronting him at the time, and not on the officer’s state of mind.  See United States v. Knights,
534 U.S. 112, 122, 122 S. Ct. 587, 593, 151 L. Ed. 2d 497 (2001); Griffin
v. State, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006).  Absent reasonable suspicion, an investigative
detention violates the Fourth Amendment. 
See Francis, 922 S.W.2d at 178. 








            The final level of interaction, an
arrest, is also a seizure. Id.  An
arrest must be accompanied by probable cause to believe that a person has
engaged in or is engaging in criminal activity. Id.  This level of suspicion is meant to protect
law abiding citizens from the high level of intrusion that accompanies an
arrest.  Id.  Unlike an investigative detention, where the
seizure may end within a brief period of time, the seizure involved in an
arrest will not be brief.  Id.

Discussion

            The sources of evidence in the
record as to the circumstances surrounding the stop of Appellee consist of the testimony
of Tyler Police Officer Malcolm McGuire and the exhibits admitted following
that testimony.  This evidence presents
us with a factual sequence that was 
uncontroverted at the suppression hearing.  Where more than one inference could be
reasonably made from this evidence, we have construed it in the light most
favorable to the trial court’s ruling.  See
Balentine, 71 S.W.3d at 768.

            According to the evidence, at around
8:45 p.m. on September 3, 2006, Officer McGuire, a three and a half year
veteran of the Tyler Police Department, responded to a “suspicious vehicle call
of a white SUV that was parked” in a “high crime area, high drug area.”  Because he had spent three years “working in
that exact portion of Tyler,” Officer McGuire knew of the nature of the area
from personal experience.  The Tyler
Police Department had been informed of this “suspicious vehicle” by an
anonymous caller.

            The SUV was unoccupied when Officer
McGuire located it.  As he approached the
SUV in his patrol car, he noticed Appellee, who was in the vicinity of the SUV,
get into the passenger seat of a second vehicle.  The second vehicle, with Appellee as a
passenger, drove off.

            Officer McGuire then continued his
investigation of the SUV, discovering that the doors were locked.  He noted that the SUV was legally parked and “not
a hazard.”  He also observed that the
hood of the SUV was warm, indicating to him that it had been driven
recently.  From this, Officer McGuire
formed the opinion that Appellee had possibly parked the SUV, gotten out, and
ridden away in the second vehicle. 
Nonetheless, because he did not see Appellee exit the SUV, he “had no
way of knowing” if Appellee had ever actually driven the SUV.

            Officer McGuire returned to his
patrol car and drove in the same direction that the second vehicle had
headed.  Eight to ten minutes later,
Officer McGuire observed Appellee being dropped off by the second vehicle and
walking away from the street.  Believing
Appellee may have parked one vehicle, gotten into a second vehicle, and been
dropped off eight to ten blocks away, Officer McGuire felt that Appellee’s
conduct was “suspicious.”








            Officer McGuire considered his
experience as a police officer.  This
experience included “experience in watching traffic in and out of drug houses”
and “experience in coming in contact with persons who had recently purchased or
were on their way to purchase [illegal] narcotics.”  Further, Officer McGuire had observed many
instances of persons “who [were] engaged in illegal activity or about to engage
in illegal activity that tried to avoid [him] while [he was] in a marked
uniform and a marked [patrol] car.”  Most
of these instances had occurred in the area in question.  

            After considering his experience,
Officer McGuire concluded that Appellee’s activities were “consistent with
someone who may have just stolen a vehicle” and “consistent with someone who
may be on their way to or from a drug area.” 
The fact that this was a “high drug area” and an area where vehicle
thefts commonly occurred supported his determination.  Nonetheless, after considering his training
and experience, Officer McGuire did not suspect that Appellee was committing a
crime, had committed a crime, or was going to commit a crime.  Thus, even after taking into account the
totality of the circumstances, it was Officer McGuire’s opinion, as an
experienced police officer, that criminal activity was not afoot.  Further, he knew that the original SUV had
not been reported as a stolen vehicle. 
However, based on Appellee’s “suspicious” activity of getting into and
later out of a vehicle, Officer McGuire decided to perform an “investigative
detention” of Appellee.

            Officer McGuire stopped, exited his
patrol car, and began following Appellee. 
Officer McGuire “called for [Appellee] to stop, but was ignored . . . .”  “After about the [fourth] time of calling
him, [Appellee] stopped walking.” 
Because his first three commands to “stop” had been ignored, Officer
McGuire had formed a “suspicion that [Appellee] may have been engaged in
illegal activity.”  He had formed this
suspicion before he issued his fourth and last “stop” command to Appellee.  








            A uniformed police officer’s command
that a person “stop” is a sufficient show of authority such that a reasonable
innocent person would have believed he was not free to decline the officer’s
requests or otherwise terminate the interaction.  See United States v. Mendenhall,
446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980) (plurality
opinion) (“[An example] of circumstances that might indicate a seizure . . .
would be . . . the use of language . . . indicating that compliance with the
officer’s request might be compelled.”); Johnson v. State, 864
S.W.2d 708, 716 (Tex. App.–Dallas 1993) (unanimous en banc opinion) (“Because
Johnson did not comply, the officers’ show of authority of chasing Johnson and
shouting at him to stop did not constitute a Fourth Amendment seizure of
Johnson.”), aff’d on other grounds, 912 S.W.2d 227 (Tex. Crim. App.
1995); see also California v. Hodari D., 499 U.S. 621, 627, 111
S. Ct. 1547, 1551, 113 L. Ed. 2d 690 (1991) (“[P]olicemen do not command ‘Stop!’
expecting to be ignored . . . .”). 
Therefore, we begin our analysis by noting that the stop of Appellee was
not a consensual encounter.  See Bostick,
501 U.S. at 439, 111 S. Ct. at 2389.  As
such, we now evaluate whether Officer McGuire had a reasonable suspicion to
conduct an investigative detention of Appellee.

            At the hearing, Officer McGuire
stated that, at the time he first commanded Appellee to stop, 

he did not
suspect that Appellee had committed a crime, was committing a crime, or was
going to commit a crime.  Thus, even
after taking into account the totality of the circumstances, it was Officer
McGuire’s opinion, as an experienced police officer, that criminal activity was
not afoot.  While the subjective state of
mind of Officer McGuire was not an absolute requirement for reasonable
suspicion to exist, see Knights, 534 U.S. at 122, 122 S. Ct. at
593; Griffin, 215 S.W.3d at 409, Officer McGuire’s application of
his training and experience to the facts of the case was evidence, under the
totality of the circumstances, that a reasonable person, with such information,
would not have believed that criminal activity was afoot.  Based upon the totality of the circumstances,
we hold that Officer McGuire did not have reasonable suspicion at the time of
his first stop command. See Brother, 166 S.W.3d at
257.  Therefore, had his initial show of
authority succeeded in stopping Appellee, that stop would have violated the
Fourth Amendment.  See Francis,
922 S.W.2d at 178.

            At some point following his first
command to stop, Officer McGuire formed a “suspicion that [Appellee] may have
been engaged in illegal activity.” 
Therefore, we must consider whether the additional fact of Appellee’s
failure to respond to Officer McGuire’s commands to stop resulted in a
reasonable suspicion by Officer McGuire that Appellee was, had been, or would
soon be engaged in criminal activity.  See
Brother, 166 S.W.3d at 257.

            Officer McGuire “had no way of
knowing” if Appellee had ever actually driven the initial “suspicious”
SUV.  All he witnessed was a man being
picked up by another driver and then dropped off after an eight to ten minute
drive.  While this was certainly a short
drive, such a drive was not short enough, in and of itself, to arouse suspicion
of any kind.  This was confirmed by the
fact that, even with his specialized training and experience, Officer McGuire
did not suspect that Appellee was committing a crime, had committed a crime, or
was going to commit a crime.








            Therefore, we must discern whether
Appellee’s receipt of a short ride from one part of a “high crime area, high
drug area” to another part of such an area, combined with Appellee’s failure to
follow a command by a uniformed police officer to “stop,” constituted
sufficient facts to create reasonable suspicion sufficient to detain him.  “An individual’s presence in an area of
expected criminal activity, standing alone, is not enough to support a
reasonable, particularized suspicion that the person is committing a crime.”  Illinois v. Wardlow, 528 U.S. 119,
124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000).  Likewise, a “refusal to cooperate, without
more, does not furnish the minimal level of objective justification needed for
a detention or seizure.”  Id.,
528 U.S. at 125, 120 S. Ct. at 676. 
Finally, the mere fact that Appellee had received an eight to ten minute
ride from another was not sufficient, by itself, to create reasonable
suspicion.  Construing the facts to
support the trial court’s ruling, and reviewing the trial court’s legal
conclusions de novo, we conclude that these facts, even when taken together,
did not supply reasonable suspicion.  See
Brother, 166 S.W.3d at 257.

            Having determined that Officer
McGuire did not have reasonable suspicion to stop Appellee, we need not
determine if the stop in question was an investigative detention or an
arrest.  In either case, Officer McGuire
did not have the particular level of suspicion necessary to stop Appellee.  The trial court’s suppression orders were not
erroneous.  We overrule the State’s sole
issue.

 

Disposition

            We affirm the orders
of the trial court.

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion delivered September 5,
2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

(DO NOT PUBLISH)











[1] See Tex. Penal Code Ann. § 38.03 (Vernon 2003) (resisting); Tex.
Penal Code Ann. § 38.04 (Vernon 2003) (evading).





[2] “At this point in time, all we’re challenging is the reason for the
initial stop.”