# NO. 12-10-00025-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL MCCORMICK,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 349TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *HOUSTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Michael McCormick appeals his conviction for possession of a controlled substance. In one issue, Appellant argues that the trial court reversibly erred by denying his motion to suppress. We affirm.

### BACKGROUND

Appellant was charged by indictment with possession of a controlled substance. Appellant filed a motion to suppress, alleging that

> [t]he actions of the U.S. Forest Service officer [who arrested him] violated the constitutional and statutory rights of [Appellant] under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

The trial court held an evidentiary hearing on Appellant's motion and subsequently denied the motion. Appellant pleaded guilty to the charge against him. The trial court found Appellant guilty and sentenced him to two years of confinement, probated for three years, and a $1,000 fine. This appeal followed.

### SUPPRESSION OF EVIDENCE

In his sole issue, Appellant argues that the arresting officer lacked adequate cause to detain him. Therefore, he argues that his consent to search his vehicle, as well as the methamphetamine found during the search, flow from an illegal detention. Appellant frames and argues his issue in the context of Fourth Amendment jurisprudence. Therefore, we have evaluated Appellant's issue in that context.

**Standard of Review and Applicable Law**

A trial court's ruling on a motion to suppress evidence is reviewed under an abuse of discretion standard. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). In reviewing a trial court's ruling on a motion to suppress, a reviewing court must give "almost total deference to a trial court's determination of historical facts" and review de novo the trial court's application of the law of search and seizure. *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Where a trial court does not make explicit findings of historical fact, the reviewing court examines the evidence in the light most favorable to the trial court's ruling and assumes the trial court made implicit findings of fact that are supported in the record. *Balentine*, 71 S.W.3d at 768.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *See* U.S. CONST. amend. IV. But the Fourth Amendment is not implicated in every interaction between law enforcement and citizens. *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16, 20 L. Ed. 2d 889 (1968). There are three recognized categories of interaction between law enforcement and citizens: encounters, investigative detentions, and arrests. *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).

An encounter is a consensual interaction that does not require any particular level of suspicion. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991). As long as the encounter is consensual, it is not a seizure under the Fourth Amendment and no reasonable suspicion is required. *Id.* An interaction rises beyond the level of a consensual encounter where (1) a person is subjected to a show of authority and submits or (2) law enforcement officers apply physical force to limit the person's movement. *See id.* In order to determine whether the show of authority submitted to rises to the level of a seizure, "a court must consider all the circumstances surrounding the [interaction] to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the [interaction]." *Id.*, 501 U.S. at 439, 111 S. Ct. at 2389. This "reasonable person" test presupposes an innocent person. *Id.*, 501 U.S. at 438, 111 S. Ct. at 2388. If an interaction rises to the level of a seizure, it will be either an investigative detention or an arrest, depending on the circumstances. *Francis*, 922 S.W.2d at 178. In order for investigative detentions and arrests to be legal, particular levels of suspicion are required. *Id.*

2

An investigative detention is a seizure under which a person is not free to leave, at least for some period of time. *Id.* In an investigative detention, the detaining officer must have specific articulable facts that, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the person stopped. *Terry*, 392 U.S. at 21, 88 S. Ct. at 1879-80. There must be a reasonable suspicion that the person detained is, has been, or will soon be engaged in criminal activity. *See Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). The existence of reasonable suspicion turns on an objective assessment of the detaining officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's state of mind. *See United States v. Knights*, 534 U.S. 112, 122, 122 S. Ct. 587, 593, 151 L. Ed. 2d 497 (2001); *Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006). Absent reasonable suspicion, an investigative detention violates the Fourth Amendment. *See Francis*, 922 S.W.2d at 178.

The final level of interaction, an arrest, is also a seizure. *Id.* An arrest must be accompanied by probable cause to believe that a person has engaged in or is engaging in criminal activity. *Id.* This level of suspicion is meant to protect law abiding citizens from the high level of intrusion that accompanies an arrest. *Id.* Unlike an investigative detention, where the seizure may end within a brief period of time, the seizure involved in an arrest will not be brief. *Id.*

## Discussion

The trial court heard the testimony of John Amegan of the United States Forest Service. Amegan testified that he was driving down a road when he came upon Appellant. Amegan "had a badge, gun, and uniform on." Appellant was standing on the side of the road by a parked vehicle, and was holding a "hand tool" in one hand and rocks in the other. The road ran through a federal forest that was temporarily closed because of a hurricane.

Amegan exited his vehicle and approached Appellant. They engaged in a consensual discussion regarding Appellant's place of residence and "what he was doing." Appellant advised Amegan that he had been collecting rocks and petrified wood from the forest. Amegan then notified Appellant that it is illegal to remove rocks and petrified wood from the forest.[1] Appellant "was kind of kidding around with [Amegan]." He admitted to him that he had "been doing it for years. And then he kind of chuckled."

---

[1] We do not address the legality of removing rocks and petrified wood from federal forests.

3

"And basically he said he did not know that he was not allowed to do that without a permit."

Amegan then asked for consent to search Appellant's truck, and Appellant consented to the search. Amegan testified that Appellant did not "appear overwhelmed" by his badge, uniform, or firearm at the time he gave his consent. The search of the vehicle uncovered methamphetamine.

Here, the evidence before the trial court reflects that Amegan's initial conversation with Appellant was part of a consensual encounter. There was no evidence that Appellant submitted after being "subjected to a show of authority" or that Amegan "appl[ied] physical force to limit [Appellant's] movement." *See* **Bostick**, 501 U.S. at 434, 111 S. Ct. at 2386. Therefore, no particular level of suspicion was required. *See id.*

By the time Appellant consented to the search of his vehicle, he had been informed by Amegan that it was illegal to remove rocks and petrified wood from the forest. Again, however, the encounter between Amegan and Appellant had not ceased to be consensual. There is no evidence that Appellant had submitted to a show of authority and or that Amegan had applied any physical force to Appellant. *See id.* Instead, the two were still engaged in a consensual encounter that included Appellant laughing during their conversation.

Because the events leading up to the search in question were part of a consensual encounter, no particular level of suspicion was required. *See id.* The trial court did not err in denying Appellant's motion to suppress. We overrule Appellant's sole issue.

<u>**DISPOSITION**</u>

We *affirm* the judgment of the trial court.

<u>**SAM GRIFFITH**</u>
Justice

Opinion delivered August 25, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

4