

# NUMBERS 13-13-00358-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                                      Appellant,

v.

BONNIE DOWNS,                                                            Appellee.

**On appeal from the County Court at Law No. 4
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Longoria
Memorandum Opinion by Justice Perkes**

The State appeals the trial court's suppression of Bonnie Downs's arrest and post-arrest evidence. Downs was arrested for driving while intoxicated, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04 (a),(b) (West, Westlaw through Ch. 46 2015 R.S.). By one issue, the State argues the trial court erred in concluding that the

arresting officer lacked either reasonable suspicion or probable cause to detain Downs. We reverse and remand.

## I.    BACKGROUND

Corpus Christi Police Officer Gilbert Cantu responded to a vehicle collision. At the scene of the accident he saw a wrecked SUV with Downs sitting in the driver's seat. The vehicle's engine was still running and Downs was crying profusely. While he was speaking to Downs, Officer Cantu noticed that she had slurred speech, bloodshot eyes, and smelled of alcohol. After further questioning, Downs stated that she was coming from a local bar. When asked by Officer Cantu if she had anything alcoholic to drink, Downs first stated "no", then changed her answer and stated she had consumed two alcoholic beverages. Officer Cantu asked Downs to exit her vehicle, which she attempted with her seatbelt still fastened. After Downs removed her seatbelt and exited the car, Officer Cantu noticed that she was unsteady on her feet and leaned on her car. Officer Cantu arrested Downs for DWI but did not administer the standardized field sobriety tests.

Downs filed a motion to suppress "all evidence gathered in violation of [her] constitutional rights." In her motion, she alleged that Officer Cantu had no reasonable suspicion and no probable cause to stop her.

At the suppression hearing, Officer Cantu testified he arrested Downs because she had an odor of an alcoholic beverage on her breath, exhibited extremely slurred speech and bloodshot eyes, and did not have the normal use of her mental and physical

faculties.   Additionally, Officer Cantu stated he arrested her based on the "totality of the situation."   He admitted that he was not sure whether Downs was unsteady on her feet because of the collision or because of alcohol consumption.   He also admitted that Downs being unsteady on her feet was not necessarily a sign of intoxication.   Officer Cantu gave no explanation regarding why he did not administer field sobriety tests, but pointed out that Downs's unsteadiness on her feet was one of many observations he used in developing probable cause to arrest.   During his examination, the trial court asked whether he informed Downs of her *Miranda* rights before questioning her.   Officer Cantu replied that he did not.

After hearing argument of counsel, the court granted the motion to suppress and the State appealed.   After the appeal commenced, the trial court entered findings of fact, stating that "the police officer made an investigative interrogation about a possible DWI charge and asked incriminating questions without first informing the defendant of her right against self-incrimination under *Miranda v. Arizona,* 384 U.S. 436 (1966)."   The trial court concluded that Officer Cantu's questioning of Downs was a custodial interrogation. Subsequently, the trial court entered supplemental findings of fact as follows:

1. The Court finds that Officer Gilbert Cantu was dispatched to a vehicle collision in which Bonnie Downs was the driver at approximately 1:00 a.m. in the morning.

2. The Court finds that Downs was behind the wheel crying while the engine was running but the car was stationary.

3. The Court finds that Officer Cantu noticed that Downs had slurred speech, a moderate odor of alcohol on her breath, and bloodshot eyes when he first approached her and asked if she was okay.

3

4. The Court finds that, after Downs had been checked out by medical personnel, Officer Cantu again approached her and asked where she was coming from and whether she had anything to drink, to which Downs responded that she had come from a local bar and at first denied consuming alcohol, but then admitted that she had consumed two alcoholic beverages.

5. The Court finds that Officer Cantu then asked Downs to exit her vehicle and that she attempted to do so with her seatbelt still on.

6. The Court finds that Downs was unsteady when she exited the vehicle and put her left arm on the vehicle to steady herself.

7. The Court finds that Officer Cantu was unsure whether Down's slurred speech, bloodshot eyes, and unsteadiness was the result of intoxication or the trauma and injuries she may have sustained in the collision.

8. The Court finds that Officer Cantu then arrested Downs for driving while intoxicated.

Additionally, the trial court entered supplemental conclusions of law as follows:

1. The Court concludes that Officer Cantu lacked either reasonable suspicion or probable cause at the time he detained Downs when she exited her vehicle.

2. The Court concludes that any evidence obtained as a result of the illegal detention and arrest of Bonnie Downs should be suppressed.

## II.    DISCUSSION

By a single issue, the State argues the trial court erred in granting Downs's motion to suppress. Specifically, the State contends Officer Cantu had reasonable suspicion to detain Downs and probable cause to arrest her for DWI. We agree with the State.

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State,* 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id.* We give almost total

4

deference to the trial court's determination of historical facts, particularly when the trial court's fact-findings are based on an evaluation of credibility and demeanor. *Crain v. State,* 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court with respect to its rulings on the application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id.* For mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Id.* We must view the evidence in the light that is most favorable to the trial court's ruling, and we are obligated to uphold the trial court's ruling on a motion to suppress if that ruling is supported by the record and if it is correct under any applicable theory of law. *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011); *State v. Ross,* 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000) (en banc).

## B.    Applicable Law

A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In order to stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* (citing *Terry*, 392 U.S. at 21). Specifically, the police officer must have some minimal level of objective justification for making the stop, i.e., when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* (citing *Terry*, 392 U.S. at 21). The

5

reasonableness of a temporary detention must be examined in terms of the totality of the circumstances. *Id.* (citing *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (en banc)).

"Probable cause" for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer. *Amador*, 275 S.W.3d at 878. A finding of probable cause requires "more than bare suspicion" but "less than ... would justify ... conviction." *Id.* (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

**C.     Analysis**

The trial court found that Downs was the driver of a vehicle involved in a collision. Additionally, the trial court found that Officer Cantu noticed that Downs had slurred speech, a moderate odor of alcohol on her breath, and bloodshot eyes when he first approached her and asked if she was okay. However, the trial court then incorrectly concluded that Officer Cantu did not have reasonable suspicion to detain Downs for further investigation.

Under these circumstances, it was reasonable for Officer Cantu to suspect that Downs was intoxicated and to temporarily detain her for further investigation. *See Hauer*

6

*v. State*, No. 14-14-00036-CR, 2015 WL 2394247, at *4, —S.W.3d— (Tex. App.—Houston [14th Dist.] May 19, 2015, no pet.) (officer had reasonable suspicion to detain when's defendant was involved in vehicle accident, unsteady on his feet with slurred speech, and odor of alcohol on his breath). Officer Cantu's testimony about Downs's slurred speech, moderate odor of alcohol, and bloodshot eyes are specific articulable facts that, combined with rational inferences from those facts, would lead Officer Cantu to reasonably conclude that Downs may be intoxicated. *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) ("A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity.")

Having established reasonable suspicion to justify a continued detention, Officer Cantu asked Downs whether she had been drinking that evening. Downs responded that she had not, then answered affirmatively. At this point, Downs was not under arrest. *See Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (holding that whether seizure of person is an investigative detention or an arrest depends upon the facts and circumstances surrounding seizure). The record indicates that Officer Cantu detained Downs in order to continue his investigation. *See Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997) ("officers may use such force as is reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety.").

Although an investigative detention is considered a seizure under the Fourth Amendment, it is characterized by lesser restraint than an arrest. *See Berkemer v.*

7

*McCarty*, 468 U.S. 420, 439–40 (1984); *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996) (en banc) (holding that investigative detention is a seizure). Persons temporarily detained for the purposes of an investigation are not "in custody" for *Miranda* purposes, and the right to *Miranda* warnings is not triggered during an investigative detention. See *Berkemer*, 468 U.S. at 440; *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997) (en banc). Consequentially, because she was not under arrest during the DWI investigation, Downs was not entitled to *Miranda* warnings.

After speaking with Downs, Officer Cantu asked her to step out of her vehicle. Downs accomplished this task with difficulty. The trial court identified the basic facts within Officer Cantu's knowledge sufficient to warrant a prudent person in believing that Downs had committed the offense of driving while intoxicated. *See Amador*, 275 S.W.3d at 879. However, the trial court noted Officer Cantu's testimony where he acknowledged he was unsure whether Downs's slurred speech, bloodshot eyes, and unsteadiness resulted from intoxication or the trauma and injuries from the collision. The trial court is incorrect to the extent it determined that Officer Cantu's uncertainty precluded a showing of probable cause to arrest.

The trier of fact has the ultimate responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). On the basis of the evidence at the suppression hearing and reasonable inferences drawn from the evidence, the record supports the conclusion that the State carried its burden of proving Officer Cantu's investigative detention was

8

supported by reasonable suspicion and his warrantless arrest was supported by probable cause. *See Amador*, 275 S.W.3d at 879; *Hauer*, 2015 WL 2394247, at *4. The trial court abused its discretion in concluding otherwise. We sustain the State's issue.

### III. CONCLUSION

We reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of September, 2015.