MARY'S OPINION HEADING 








NO.
12-10-00044-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH
COURT OF APPEALS DISTRICT

 

TYLER,
TEXAS

JUSTIN
GRIFFIN,                                       §                      APPEAL
FROM THE 

APPELLANT

 

V.                                                                    §                      COUNTY
COURT AT LAW #2

 

THE STATE OF TEXAS,

APPELLEE                                                   §                      ANGELINA
 COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

Justin
Griffin appeals from his conviction for evading arrest or detention, a class A
misdemeanor.  In
two issues, Appellant claims that the trial court erred in denying his
challenge to the composition of the jury and that the evidence is legally and
factually insufficient to support the conviction.  We affirm.

 

Background

            Appellant
was an assistant manager of a retail store in the mall in Lufkin, Texas.  One
evening, Appellant witnessed two young men quickly leaving the store.  He then
noticed that a hat was missing from the store.  Believing that the two young
men were responsible for the missing hat, Appellant confronted them.  Appellant
also called for the mall security.

            The
mall security officer, Brandon Smith, arrived on the scene, and Appellant asked
Smith to search the two young men.  Smith did not conduct a search, but instead
stated that he would call the Lufkin police.  Before Smith could call, the
confrontation between Appellant and one of the young men, Stavinsky Ford,
escalated and included physical contact.  Thus, Smith reported a fight to the
police rather than a possible theft.  Tyson Hoover, a Lufkin police officer who
was off duty at the time, assisted Smith in separating Appellant and Ford.  The
group then left the mall building and went to the parking lot.  

            Tempers
had not eased by the time Officer Sean Alexander with the Lufkin Police
Department arrived a short time later and attempted to gain control of the
situation.  Hoover identified Appellant and Ford to Alexander as the two
participants in the fight.  Appellant was struggling with Smith.  Alexander
ordered Ford to sit on the ground and attempted to detain Appellant.  Because
Appellant was still being aggressive, Alexander attempted to place him in
handcuffs.  Appellant avoided being handcuffed, Alexander grabbed him, and the
two men fell to the ground.  Appellant was able to extricate himself and tried
to get away.  Alexander and Hoover, along with another officer, tackled and
detained Appellant.  After the officers conducted their investigation,
Appellant was charged with evading detention.  Appellant pleaded not guilty,
and a jury trial was held.  

            Following
the voir dire examination of prospective jurors, the State used two of its
peremptory challenges to strike the two African American potential jurors who
were within the zone of jurors who would serve if not struck.  Appellant, who
is African American, made a Batson[1]
motion complaining of the State’s strikes.  After an evidentiary hearing, the
trial court denied the motion.  The jury found Appellant guilty.  The trial
court assessed a sentence of confinement for 180 days and a fine of $300.  The
trial court suspended the sentence and ordered Appellant placed on community supervision. 
This appeal followed.

 

 

Batson Motion

            In
his first issue, Appellant contends that the trial court erred in denying his Batson
motion.  Specifically, Appellant alleges that the State engaged in
purposeful discrimination when it used its peremptory challenges to excuse the
two African American individuals from the venire. 

Applicable
Law 

            The
Equal Protection Clause of the Fourteenth Amendment to the United States
Constitution forbids a party from challenging potential jurors on the basis of
their race.  U.S. Const. Amend. XIV; Batson v.
Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69
(1986).  A trial court follows a three step process to evaluate a claim that a
litigant has made a peremptory strike based on race.  Snyder v. Louisiana,
552 U.S. 472, 476, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008).  First, a
defendant must make a prima facie showing that the state has used a peremptory
challenge to remove a potential juror on account of race.  Id.;
Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770, 131 L. Ed.
2d 834 (1995).  A defendant may establish a prima facie case solely on evidence
concerning the state’s exercise of peremptory challenges at trial.  Batson,
476 U.S. at 96, 106 S. Ct. at 1723.  He must also show that these facts and any
other relevant circumstances raise an inference that the state has excluded
potential jurors from the petit jury on account of their race.  Id.  


            Once
the defendant has made a prima facie showing, the burden shifts to the state to
come forward with a race neutral explanation for challenging the jurors.  Snyder,
552 U.S. at 476-77, 128 S. Ct. at 1207; Batson, 476 U.S. at
97-98, 106 S. Ct. 1723-24.  If the state offers race neutral reasons for the
strikes, the burden shifts again to the defendant to show that the state’s race
neutral explanations for the strikes are contrived or a pretext to conceal a racially
discriminatory intent.  Shuffield v. State, 189 S.W.3d 782, 785
(Tex. Crim. App. 2006); Jasper v. State, 61 S.W.3d 413, 421 (Tex.
Crim. App. 2001).  The credibility of the prosecutor who offers race neutral
explanations for disparate striking of jurors can be measured by “the prosecutor’s
demeanor; by how reasonable, or how improbable, the explanations are; and by
whether the proffered rationale has some basis in accepted trial strategy.”  Miller–El
v. Cockrell, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d
931 (2003).

            We
will disturb a trial court's ruling on a Batson motion only if it
is “clearly erroneous.” Snyder, 552 U.S. at 477; 128 S. Ct. at
1207; Guzman v. State, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002). 
Generally, a fact finder’s decision is clearly erroneous when it leaves an
appellate court with a “definite and firm conviction that a mistake has been
committed.”  Guzman, 85 S.W.3d at 254.  We review the evidence in
the light most favorable to the trial court's ruling and afford great deference
to that ruling.  Jasper, 61 S.W.3d at 422.  Furthermore, a claim
that the proffered race neutral reasons for strikes are pretextual presents a
question of fact, not law, and the trial court is in the best position to
evaluate such claims.  Watkins v. State, 245 S.W.3d 444, 447
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 92, 172 L. Ed. 2d 78
(2008); Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim. App.
2004).  The ultimate plausibility of a race neutral explanation is to be
considered in the context of whether the defendant has satisfied his burden to
show that the strike was the product of the prosecutor’s purposeful
discrimination. Watkins, 245 S.W.3d at 447.

Analysis

            At
trial, Appellant objected that the State had struck the two African American
members of the prospective jury panel, Jurors 1 and 11.  The trial court found
that Appellant had presented a prima facie showing that the State used its
peremptory challenges to remove jurors on account of race.  The State then
responded that it had legitimate, race neutral reasons for the strikes.  To
explain its strike of Juror 1, the State argued that he indicated he had
difficulty reading and writing and he became confused with some of the legal
principles raised by Appellant during his voir dire examination.  To explain
its strike of Juror 11, the prosecutor pointed out that the juror said that be
believed that law enforcement officers “slant the evidence to their favor.”[2]  

            Appellant
then cross examined the prosecuting attorney.  Appellant established that the
prosecutor had not directed any questions specifically to either Juror 1 or
Juror 11.  He also established that while Juror 1 had been confused by one of
Appellant’s voir dire questions, he was able to grasp the concepts that were
the focus of another series of questions.  Appellant also attempted to present
evidence that the State had treated similarly situated nonminority panel
members differently.  The trial court found that the State’s strikes were
racially neutral and denied Appellant’s Batson motion.

We
examine all relevant factors bearing upon the trial court’s decision.  First,
given the low number of African Americans in the jury strike zone, the analysis
of the statistical data pertaining to the State’s peremptory strikes is
questionable, but not too great to attribute merely to happenstance.  Second, a
comparative juror analysis indicates that Juror 1 was the only member of the
panel who claimed to have difficulty reading and writing.  Juror 9 sought to be
disqualified, but for a different reason––because she was enrolled in school.  The
State did not strike Juror 9.[3]  With respect to the State’s
suggestion that Juror 1 was easily confused by legal principles, Juror 5 was also
confused by one of Appellant’s voir dire examination questions.  However, Juror
5 did not state that she had difficulty reading and writing.[4]  And a
comparative juror analysis shows that while other panel members stated that law
enforcement officers were not more credible, Juror 11 was the only member of
the panel to exhibit the belief that law enforcement officers “slant the
evidence to their favor.”  

Third,
the record shows that only Appellant, and not the State, requested a jury
shuffle.  Fourth, a review of the State’s voir dire examination shows no
contrasting voir dire questions posed respectively to minority and nonminority
panel members.  Fifth, there is no evidence offered in this case to show a
history of the State’s systematically excluding African Americans from juries. 
Sixth, the reasons provided by the State for the strikes are facially racially
neutral when measured by “how reasonable, or how improbable, the explanations
are; and by whether the proffered rationale has some basis in accepted trial
strategy.”  See Miller–El, 537 U.S. at 339, 123 S. Ct. at 1040.  

            Having
reviewed the entire record, we conclude the trial court’s decision to deny
Appellant’s Batson motion was not clearly erroneous.  Even though
a prima facie case of racial discrimination was established, the State provided
racially neutral explanations for its use of peremptory challenges, and
Appellant failed to carry his burden to show that the stated reasons were
pretextual.  The strike of Juror 11 needs almost no explanation.  The State was
entitled to rely on Juror 11’s statement indicating that he believed police
officers were not credible witnesses.  The trial court was in the best position
to assess the reasonableness of the State’s assertion that Juror 1 appeared to
be unable to participate meaningfully in deliberations.  Such an assessment,
both of the juror and of the prosecutor’s explanation of his strike, would rely
on many intangible judgments made by the trial court.  See Miller–El,
537 U.S. at 339–340, 123 S. Ct. at 1040–41.  Giving, as we must, deference to
the trial court’s ruling, we do not have a “definite and firm conviction that a
mistake has been committed.”  Guzman, 85 S.W.3d at 254.  We
overrule Appellant’s first issue.

 

Sufficiency of the Evidence

            In
his second issue, Appellant contends that the evidence is legally and factually
insufficient to support his conviction.  Specifically, Appellant argues that
the evidence is insufficient to establish that his arrest or detention was
lawful.

Standard
of Review

            Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  Jackson v.
Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d
560 (1979); Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San
Antonio 1999, pet. ref’d).  The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Johnson v.  State, 871 S.W.2d
183, 186 (Tex. Crim. App. 1993).  The evidence is examined in the light most
favorable to the jury’s verdict.  Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Johnson, 871 S.W.2d at 186.  A successful legal
sufficiency challenge will result in rendition of an acquittal by the reviewing
court.  See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct.
2211, 2217-18, 72 L. Ed. 2d 652 (1982). 

            In
reviewing factual sufficiency, we consider all the evidence weighed by the jury
that tends to prove the existence of the elemental fact in dispute and compare
it to the evidence that tends to disprove that fact.  Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Although we are authorized to
disagree with the jury’s determination, even if probative evidence exists that
supports the verdict, our evaluation should not substantially intrude upon the
jury’s role as the sole judge of the weight and credibility of witness
testimony.  Id.; see Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996).  Where there is conflicting evidence,
the jury’s verdict on such matters is generally regarded as conclusive.  Van
Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet.
ref’d).  Ultimately, we must ask whether a neutral review of all the evidence,
both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). A verdict will be set aside “only if the evidence supporting guilt
is so obviously weak, or the contrary evidence so overwhelmingly outweighs the
supporting evidence, as to render the conviction clearly wrong and manifestly
unjust.”  Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App.
2002); see also Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006); Sims v. State, 99 S.W.3d 600, 601 (Tex. Crim.
App. 2003).

            Under
either the legal sufficiency or factual sufficiency standard, our role is that
of appellate review, and the fact finder is the sole judge of the weight and
credibility of a witness’s testimony.  Wesbrook v. State, 29
S.W.3d 103, 111-12 (Tex. Crim. App. 2000).  The fact finder may choose to
believe all, some, or none of a witness’s testimony.  Sharp v. State,
707 S.W.2d 611, 614.

            The
legal and factual sufficiency of the evidence is measured against the elements
of the offense as defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge
would include one that “accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant was tried.”  Id.

Applicable
Law

            As
relevant here, a person commits the offense of evading detention or arrest by
intentionally fleeing from a person he knows is a peace officer attempting
lawfully to detain him.  Tex. Penal Code
Ann. § 38.04(a) (Vernon Supp. 2009). 

There are
three recognized categories of interaction between law enforcement and citizens:
encounters, investigative detentions, and arrests.  Francis v. State,
922 S.W.2d 176, 178 (Tex. Crim. App. 1996).  An encounter is a consensual
interaction that does not require the initiating police officer to have any
particular level of suspicion.  Florida v. Bostick, 501 U.S. 429,
434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991) (plurality opinion).  As
long as the encounter is consensual, it is not a seizure under the Fourth
Amendment.  Id.  An interaction rises beyond the level of a
consensual encounter where (1) a person is subjected to a show of authority and
submits or (2) law enforcement officers apply physical force to limit the
person’s movement.  See id.  In order to determine whether
a submission to a “‘show of authority’” rises to the level of a seizure, “a
court must consider all the circumstances surrounding the [interaction] to
determine whether the police conduct would have communicated to a reasonable
person that the person was not free to decline the officers’ requests or
otherwise terminate the [interaction].”  Id., 501 U.S. at 439,
111 S. Ct. at 2389.  This “reasonable person” test presupposes an innocent
person.  Id., 501 U.S. at 438, 111 S. Ct. at 2388.  If an
interaction rises to the level of a seizure, it will be either an investigative
detention or an arrest, depending on the circumstances.  Francis,
922 S.W.2d at 178.  

            An
investigative detention is a seizure under which a person is not free to leave,
at least for some period of time.  Id.  In an investigative
detention, the detaining officer must have specific, articulable facts that, in
light of his experience and personal knowledge, together with inferences from
those facts, would reasonably warrant the intrusion on the freedom of the
person stopped. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868,
1879-80, 20 L. Ed. 2d 889 (1968).  There must be a reasonable suspicion that
the person detained is, has been, or will soon be engaged in criminal activity.
 See Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim.
App. 2005).  The existence of reasonable suspicion turns on an objective
assessment of the detaining officer’s actions in light of the facts and
circumstances confronting him at the time, and not on the officer’s state of
mind.  See United States v. Knights, 534 U.S. 112, 122,
122 S. Ct. 587, 593, 151 L. Ed. 2d 497 (2001); Griffin v. State,
215 S.W.3d 403, 409 (Tex. Crim. App. 2006).  Absent reasonable suspicion, an
investigative detention violates the Fourth Amendment.  See Francis,
922 S.W.2d at 178. 

            The final
level of interaction, an arrest, is also a seizure. Id.  An
arrest must be accompanied by probable cause to believe that a person has
engaged in or is engaging in criminal activity.  Id.  

Legal
Sufficiency

            The
jury heard evidence that Smith was prepared to call the Lufkin Police Department
to investigate a possible theft by Ford when Appellant physically attacked
Ford.  Because a fight was more serious in Smith’s eyes than a possible theft,
Smith reported the fight to the Lufkin Police Department.  Once the physical
confrontation began, Appellant continued to aggressively pursue Ford, even
though he was being physically restrained by Smith.  Appellant continued to act
aggressively after the group had exited the mall.  Alexander had been told that
a fight had occurred between Appellant and Ford, so he wanted to detain both
combatants.  Because Appellant was being the more aggressive, Alexander, who
was wearing his police uniform, attempted to detain him first.  Appellant
resisted Alexander’s attempt, got away from him, and ran.  Additionally, the
jury was presented with videotaped evidence of Alexander’s attempt to detain
Appellant, and Appellant’s reaction to the officer’s attempt.

            Appellant
argues that he committed no crime because the officer did not have probable
cause to arrest him and did not have reasonable suspicion to detain him. 
Instead, he suggests that the officer kidnapped him.  

            In
its two paragraph argument on this issue, the State, without citation to
authority, asserts that Appellant should have known that the officer attempted
to detain him.  This is not the test.  It is an element of the offense that the
arrest or detention be lawful.  See Tex.
Penal Code Ann. § 38.04(a).  The focus of Appellant’s argument is on
whether the officer’s attempt to detain Appellant was lawful.[5]


The
existence of reasonable suspicion to support an investigative detention turns
on the totality of the circumstances in each case.  See Alabama v. White,
496 U.S. 325, 328-29, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301 (1990).  Under
this analysis, reasonable suspicion is dependent upon both the content of the
information possessed by the officer and its degree of reliability.  Id.,
496 U.S. at 330, 110 S. Ct. at 2416.  The call to the dispatcher, which was
relayed to Alexander, was that there was a fight in progress.  We know that the
call came from the mall security officer because he testified that he made the
call.  But Alexander did not know this, or if he did, he did not testify that
he did.  Therefore, the dispatch is like a tip from an informant.  

A
tip from an informant, generally speaking, must be corroborated before an
officer may rely upon it.  Id., 496 U.S. at 330, 110 S. Ct. at
2416.  There was ample corroborating evidence in this case.  When Alexander arrived
at the scene of the disturbance, he saw Appellant struggling with the mall
security officer.  Additionally, an off duty police officer indicated to Alexander
that Appellant and another man were the men who had been fighting.  Alexander then
approached Appellant and attempted to detain him.  Given the circumstances, it
was lawful for Alexander to detain Appellant to maintain the status quo for a
brief period of time in order to conduct an investigation.  See Balentine
v. State, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002); Rhodes v.
State, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

            Viewing
the evidence in the light most favorable to the jury’s verdict, the jury could
have reasonably determined that the officer’s attempt to detain Appellant was
lawful and that Appellant fled from the officer.  Therefore, the evidence is
legally sufficient to support the jury’s verdict.  We overrule Appellant’s
first issue.

Factual
Sufficiency

            A
review of all of the evidence without the light most favorable to the verdict
reveals some evidence that is contrary to the verdict.  Specifically, Appellant
was the store manager, and he believed that Ford had stolen merchandise. 
Appellant wanted the store’s merchandise back, and he wanted Ford investigated
for theft.  Appellant called for security.  He also indicated his willingness
for the Lufkin police to investigate Ford.  Appellant testified that Ford was
the aggressor, not Appellant.  Further, although Appellant was acting
aggressively in the parking lot, he never actually made physical contact with
Ford in the parking lot.  Alexander attempted to detain Appellant almost
immediately, without obtaining any information from Appellant.  Finally, it was
uncontroverted that Ford was verbally accosting Appellant throughout the
confrontation.

            Nonetheless,
we must consider this evidence in the context of the record as a whole. 
Regardless of the theft issue, it was within the jury’s province to believe that
Appellant acted improperly by striking Ford.  The jury could have determined
from the evidence that Ford was cooperating with Smith and waiting for the
police to conduct an investigation of his alleged theft.  Similarly, the jury
could have determined that Alexander’s attempted detention of Appellant was
proper.  Alexander was told that Appellant and Ford were fighting.  Therefore, under
the facts of this case, he had a reasonable and articulable basis to believe that
Appellant had been involved in criminal activity.

Our
review of the record as a whole, with consideration given to all of the
evidence both for and against the jury’s finding, has not caused us to conclude
that the proof of guilt is so obviously weak or is otherwise so greatly
outweighed by contrary proof as to render Appellant’s conviction clearly wrong
or manifestly unjust.  Therefore, the evidence is factually sufficient to
support the jury’s verdict.  We overrule Appellant’s second issue.

 

Disposition

Having
overruled Appellant’s first and second issues, we affirm the
judgment of the trial court.

 

 

                                                                                                Brian Hoyle

                                                                                                         
Justice

 

 

 

Opinion
delivered September 1, 2010.

Panel consisted of Worthen, C.J.,
Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO
NOT PUBLISH)

 









[1] Batson v. Kentucky, 476
U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986).





[2] This statement by Juror 11 was
made during Appellant’s voir dire examination.  However, Juror 11 did not
respond when the State asked whether anyone would “give a policeman a leg up or
leg down.”

 





[3] Juror 9 did not serve on the
jury.  Therefore, it appears that Appellant struck Juror 9.

 





[4] Juror 5 also did not serve on
the jury.  Therefore, it appears that Appellant struck Juror 5.

 





[5] Appellant argues that the police
officer did not have probable cause to make an arrest.  The statute
criminalizes fleeing from an arrest, but the State only charged Appellant with
fleeing from a detention.